## CANTANNO v. JAMES A. STEVENSON CO.

(Supreme Court, Appellate Division, Second Department.    April 14, 1916.)

MUNICIPAL CORPORATIONS ☞706(7)—INJURY ON STREET—CONTRIBUTORY NEG-LIGENCE—CHILDREN.

Evidence that, as defendant's truck started, the hub of a rear wheel extending about two inches onto the curb collided with a young child playing tag and running towards the truck, looking back, *held* to warrant a dismissal of the child's guardian's complaint.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. ☞706(7).]

Appeal from Trial Term, Queens County.

Action by Edward Cantanno, by his guardian ad litem, against the James A. Stevenson Company. From a judgment dismissing his complaint, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and MILLS, JJ.

William L. Bowman, of New York City, for appellant.

James F. Mahan, of New York City (Leland S. Osmun, of New York City, and Harold J. Conlon, of Brooklyn, on the brief), for respondent.

THOMAS, J.    The complaint was dismissed. Defendant's four horses before a long truck drew up on the side of Eighth street in Long Island City. The horses' heads were at the crosswalk at the corner of that street and Vernon avenue. The driver, leaving his truck, went over the way, and after some 15 minutes returned to his truck and drove away. As the truck was started up, the rear right wheel next to the curb came in contact with plaintiff, then about 3½ years old, and he was thrown in front of the wheel and severely injured. The hub of the wheel extended about two inches onto the curb and collided with the child, who, playing tag, was running towards the wagon and looking back at the boy who was chasing him. The only person who testified to the approach of the boy to the hub, as just stated, was the witness Cassidy, although her sister, McVey, and the child's mother, happening to look from the window of her house, saw the wheel in contact with the boy.

Is there evidence of defendant's negligence? It will be noticed that the driver probably left and returned to the truck on its near side, and before starting did not look along the sidewalk. Moreover, as he started up he was talking with some one ahead of him and across the way. Was he negligent in not looking back along the right side of his

wagon? Had he done so, he would have seen children playing on the sidewalk, and other persons there. He would not have seen the plaintiff stationary at the curb and in front of his wheel, but playing on the sidewalk; and, had he continued looking until he started, he probably would have seen him running toward the wheel and looking back, and away from the wagon, towards another child pursuing him. Seeing the child so situated, would he, in the exercise of ordinary care, have reflected that there was a reasonable probability that the child would run into the hub projecting two inches upon the curb, and, deterred by some foreboding of injury to him, awaited the result of the boy's advance? I think that the law did not require such apprehension. The wagon was rightfully where it was, and was started as it was privileged to do, and the act initially lawful did not become wrongful because, simultaneously with the starting, a child with averted head, in the eagerness of his play, ran into it. The driver could not be substituted as the caretaker in the place of the absent mother, or, if something of solicitude attached to him in seeing, before he started his horses, that the child was not in contact with the wagon, he was not obliged to extend his concern, lest the plaintiff or some of the other children on the sidewalk should in their play fail to clear the ongoing truck.

The contention of the learned counsel for the appellant is that the driver should have watched until his hub was clear of the sidewalk. If the child, before the truck was started, had been in such relation to the truck as to show a probability that its progress would injure him, that duty might arise. But the mere fact that children were playing near it and might run into it furnishes no occasion for such rule, and the decisions cited do not justify its application in the present case. In Connaughton v. The Sun Printing & Publishing Association, 73 App. Div. 316, 76 N. Y. Supp. 755, it appeared that a horse was galloping at a speed of from 10 to 12 miles an hour, with the right hind wheel in the gutter, and the hub of the front wheel so overreaching as to strike a boy's leg, whereby he was thrown under the wheel to his injury. The driver, speeding rashly, was in a position to see the boy standing so near the curb that the projecting hub would come in contact with him. The fact differs essentially from the case at bar, where the team started up when the child was clear of the hub, but reached it as it was starting up, or after it was in motion. In Jones v. Weigand, 134 App. Div. 644, 119 N. Y. Supp. 441, the driver of a coach started up the horses, "taking no heed of the plaintiff, a little child, who was playing near the step of the coach, with the result that the plaintiff was thrown under the wheel and run over." There was evidence that the child was standing on the curb, and that he was hit by the step of the coach as it was started up, so that the rear wheel passed over him. There was also evidence that, when the driver started to get up on his seat, the boy was on the sidewalk, but did not go towards the coach. The coach projected over the sidewalk about a foot and a half, and, as one witness described, the boy stood on the sidewalk near the step of the coach, when suddenly the driver came running out, jumped on the coach without looking to see in

what position the child was, and drove on. In Hodges v. Westcott Express Company, 39 App. Div. 545, 57 N. Y. Supp. 318, it appeared that a boy while crossing the street dropped a piece of money, and, while he was attempting to pick it up, slipped, and before regaining his feet was injured by defendant's horses. In Bernstein v. Empire Bridge Co., 146 App. Div. 529, 131 N. Y. Supp. 129, the defendant's truck was driven at considerable speed, and carelessly came in contact with one of the feet of plaintiff, who was sitting on the curbstone with her feet in the gutter. The driver was not looking in the direction in which he was driving, and the lines were loose and not in his hands. In Sheehy v. Burger, 62 N. Y. 558, the jury could have inferred that a plank projecting from a truck turning a corner swept around and hit the plaintiff, just stepping off the sidewalk.

The other cases cited by the appellant are in their facts still farther from those in the case at bar. Had the plaintiff been standing in such proximity to the hub that it would have come in contact with him if the wagon were started, the decisions to which reference has been made would have application; but in fact the plaintiff was not so stationed when the truck started.

The judgment should be affirmed, with costs. All concur.