JACK HAMMER, an Infant, by ANNA HAMMER MCAVOY, His Guardian ad Litem, Respondent, *v.* BLOOMINGDALE BROTHERS, INC., Appellant.

First Department, February 5, 1926.

**Motor vehicles — action to recover for injuries suffered by plaintiff when defendant's electric motor truck ran over his leg — plaintiff, infant, with another boy, was riding in small carts on street — plaintiff's cart and another cart occupied by another boy were being drawn down grade by third boy — defendant's chauffeur driving slowly in opposite direction saw boys but gave no warning — boys did not see defendant's truck — chauffeur bound to exercise extreme care where children are playing in street — verdict not against evidence — plaintiff not guilty of contributory negligence, as matter of law — negligence of boy drawing carts not imputable to plaintiff — instructions — defendant cannot complain of deficiency in charge in absence of request.**

In an action to recover for injuries suffered by plaintiff, a boy of about ten years of age, when defendant's electric motor truck ran over his leg while plaintiff was playing in a street in New York city, the verdict of the jury in favor of the plaintiff is not against the evidence, since it appears that the plaintiff and another boy, both of whom had small carts which they had attached together, were being drawn down the street by a third boy just before the accident; that defendant's chauffeur, who was driving an electric motor truck slowly in the opposite direction, saw the boys approaching but gave no warning; that the boys did not see the defendant's motor truck until they were very close to it and then the boy who was drawing the carts dropped the rope and ran to the sidewalk permitting the carts to run in front of the motor truck.

The chauffeur did not have the right to assume that the boys would pass by the motor truck safely, but it was his duty when he saw the boys approaching to give a warning, especially in view of the fact that the motor truck was driven by electricity and made very little, if any, noise.

It is the duty of a driver of an automobile upon the streets of a city where children are playing, to exercise extreme care.

The plaintiff was not guilty of contributory negligence, as a matter of law, since it appears that at the time he attempted to cross the street he did not observe defendant's truck approaching, and furthermore, if the boy who was drawing the carts was guilty of negligence, his negligence cannot be imputed to the plaintiff.

The defendant cannot complain that the court failed to give the jury any instructions as to what would constitute negligence on the part of defendant's chauffeur, or to state a rule by which the jury could test the conduct of the plaintiff and his playmates to determine whether or not the plaintiff was guilty of contributory negligence, for no exception was taken to the charge as given and defendant's counsel did not request the court to instruct the jury along the lines mentioned.

APPEAL by the defendant, Bloomingdale Brothers, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of April, 1925, upon the verdict of a jury for $4,000, and also from

an order entered in said clerk's office on the 24th day of April, 1925, denying defendant's motion for a new trial made upon the minutes.

*William Butler* [*George F. Hickey* of counsel], for the appellant.

*Kennedy & Wittstein* [*Charles Kennedy* of counsel; *Leonard F. Fish* with him on the brief], for the respondent.

MERRELL, J.   The action was brought by the plaintiff, an infant, by his guardian, to recover for injuries sustained because of the alleged negligence of the chauffeur of the defendant in driving the defendant's delivery truck in such a careless manner that it came into collision with and ran over the infant plaintiff causing serious injuries for which a recovery is sought.   The plaintiff at the time of the accident was a boy of the age of ten years.   On the day of the accident, August 15, 1922, the plaintiff was upon Eighty-eighth street in the borough of Manhattan, between Amsterdam avenue and Broadway.   He had a little soapbox wagon made from an ordinary soapbox and having baby carriage wheels.   With him was another boy of about the age of thirteen years, by the name of John Egan, who also had a soapbox wagon similar to the plaintiff's. Between Amsterdam avenue and Broadway, Eighty-eighth street descends toward the west at a considerable grade, and the plaintiff and his companion had on the afternoon of August 15, 1922, been coasting on said street from Amsterdam avenue toward Broadway. The street was paved with asphalt and made a good coasting place for the boys.   They were also accompanied by a third youngster, a colored lad, by the name of James Parker, whose mother was then janitress in the house where plaintiff and Egan lived.   Just prior to the accident the two carts were hitched together. The cart in which the plaintiff was riding was ahead and the Egan boy's cart, tied with a string to the rear axletree of the plaintiff's cart, was behind it about three feet.   The colored boy, just prior to the accident, at about four or half-past four o'clock in the afternoon, was hauling the two carts by means of a string three or four feet in length hitched at the front of the plaintiff's cart. He was pulling the two boys on the downgrade on the northerly side of Eighty-eighth street.   Owing to the fact that there were automobiles parked along the northerly curb, the tandem carts were being pulled at some distance from the curb and nearly in the middle of the street.   The plaintiff and the Egan boy lived in a house on the southerly side of the street, at 208 West Eighty-eighth street.   The negro boy was not sworn as a witness at the trial, but both the plaintiff and the Egan boy testified that as the colored boy was hauling them down Eighty-eighth street and as they

First Department, February, 1926.     [Vol. 215

approached the plaintiff's home they desired to cross to the south side of the street; that when they were about to cross to the southerly side of West Eighty-eighth street both the plaintiff and Egan looked toward Amsterdam avenue, to the east, and toward Broadway, to the west, to ascertain if there were any approaching vehicles, and seeing none the colored boy started diagonally across the street toward the southerly curb. The plaintiff testified that when they had reached a point about eight or ten feet from the southerly curb the colored boy dropped the cord with which he was hauling the carts and made a sudden dash for the southerly curb, and that at that instant he saw, about five or six feet away, the approaching truck of the defendant. The truck in question was a Walker electric, one and one-half ton light delivery truck used by the defendant in delivering merchandise in the city.

Two bystanders in front of 200 West Eighty-eighth street both testified they had been watching the boys coasting on Eighty-eighth street and saw them coming down hauled by the colored boy in the middle of the street, and that just as they were turning toward 204 West Eighty-eighth street to the south side of the street, the colored boy let go of the rope, and that then the defendant's truck was right on top of the plaintiff; that when the colored boy dropped the rope he was about eight or ten feet away from the walk. These two bystanders testified that the truck was going pretty fast, and that it did not diminish its speed at all, and that no horn or warning was given by the driver of the defendant's truck.

The testimony in behalf of the plaintiff is that immediately after the colored boy dropped his hauling cord he ran for the curb and plaintiff's little wagon ran diagonally and came in contact with the left front wheel of the defendant's truck; that the wheel passed over the boy's leg and fractured the femur bone and caused the injuries for which he seeks to recover. The plaintiff testified that as soon as the colored boy dropped the cord he ran for the walk, and that he saw the approaching truck and tried to get off his wagon but was unable to do so soon enough to prevent being struck; that he fell and that the left wheel of the truck passed over him. The Egan boy was quick enough to get out of his wagon and away from danger. The colored boy barely escaped being hit when he ran to the south curb in front of the defendant's electric truck. Indeed, he was touched by the bumper of the truck, but escaped injury and immediately ran into a nearby cellarway and hid.

The testimony of the driver of the car and a helper who was seated in the electric truck with the driver was to the effect that the

truck was driven by an electric motor which was charged each night for use on the day following; that on a level street when the freshly charged battery was put to use the truck was capable of making from ten to twelve miles an hour as a maximum speed; that toward the latter part of the day the speed of the truck diminished to nine or ten miles an hour, maximum, and that on an upgrade that rate of speed could not be attained.   The defendant's chauffeur and his helper testified that just prior to the accident they had stopped to make a delivery at 210 West Eighty-eighth street, the chauffeur stopping his car and his helper delivering the goods at that number; that after the helper returned to his seat in the truck the chauffeur started the same and that after they had proceeded about twenty or twenty-five feet he saw the two boys in their wagons hauled by the colored boy coming down Eighty-eighth street from the east at about the middle of the street, and that the boys at that time as they were coming down the hill, were thirty to fifty feet away from the defendant's truck; that there was a pretty good grade at that point toward the west.   The chauffeur and his helper both testified that they continued about six or seven feet from the southerly curb toward the east with their truck and that at that time their truck, having stopped at 210 East Eighty-eighth street, was not going to exceed two miles an hour, " just about dragging along," as defendant's chauffeur testified.   The chauffeur and his helper testified practically alike that when the boys had reached a point about three or four feet from the defendant's truck the colored boy turned his cart right in front of the defendant's truck, and in a slanting direction the plaintiff's little wagon ran into the truck of the defendant. The defendant's chauffeur testified that he immediately applied both his brakes and brought his truck to a stop within a foot; that bystanders came running and told him to start and back up, which he did, not knowing whether he had struck the boy or that his truck was upon the plaintiff.   Asked on cross-examination why, when he saw the colored boy drop the rope and the cart in which the plaintiff was riding coming toward the truck three or four feet away, he did not stop his truck, the chauffeur replied: " Because they could have passed me if they kept right on."   The chauffeur testified that it was after the colored boy had dropped the rope that the cart turned in towards the defendant's truck. The chauffeur further testified on cross-examination that when he saw the wagon in which the plaintiff was riding coming in toward him he expected that it would pass to the side of the defendant's truck.

The trial court submitted the questions as to the negligence

of the defendant and the contributory negligence of the plaintiff to the jury for its determination. The appellant contends that there was no negligent act of defendant's chauffeur proven which was the proximate cause of the plaintiff's injuries, and, furthermore, that it appeared as matter of law that the plaintiff was guilty of contributory negligence. The appellant also urges that the court failed to point out to the jury any negligence on the part of the defendant's chauffeur upon which a verdict in plaintiff's favor could be predicated.

I think the case an extremely close one, but upon one point I think the jury was justified in finding the chauffeur negligent. The chauffeur testified, as before stated, that after he started his truck, after making the delivery at 210 West Eighty-eighth street, and after he had proceeded easterly at a very slow rate of speed from twenty to twenty-five feet, he then saw quite rapidly approaching him from the east the two boys in their wagons drawn by the colored boy proceeding west in about the middle of the street. It is very evident from the testimony that neither the plaintiff nor the colored boy saw the approaching truck of the defendant and that neither of them knew of its proximity until the moment when the colored boy saw it some seven or eight feet away and, becoming confused, dropped his cord and ran for the southerly curb. The plaintiff testified that his first intimation of the approaching truck was when he saw it after the colored boy had dropped the cord with which he was hauling their wagons and dashed for the curb, and that then it was too late for the plaintiff to avoid being struck. Egan testified that after the colored boy dropped the cord their wagon skidded toward the truck. The testimony of the chauffeur and his helper leaves no room for doubt that they believed that the boys in coasting down Eighty-eighth street would continue at about the relative position they were in when first seen by the chauffeur and his helper, to wit, in the middle of the street, and that by so doing there would be no danger of a collision. I think the chauffeur improperly made this assumption, and that in the exercise of proper care the chauffeur should have given warning to the boys of the approaching truck. No warning whatever was given. The bystanders who saw the accident and the boys themselves testified that no horn was sounded, and neither the chauffeur nor his helper claimed that any signal was given. The defendant's truck was electrically driven and, within common knowledge, such a vehicle, driven on a smooth street, makes little noise. I think the duty of the driver of an automobile upon the streets of New York city, where children, of necessity, play, is to exercise extreme care when driving upon

streets in which children are playing. The driver of the defendant's truck was in duty bound to do more than drive slowly. He was called upon to exercise extraordinary care in view of the fact that children of immature judgment were playing upon the street in front of him. In *Collins* v. *South Boston Railroad* (142 Mass. 301) the court said (at p. 312): "The driver of a horse car in a street where there are children may well be required to manage his car with reference to all the risks that may reasonably be expected, and among these may be reckoned the risks arising from the heedlessness and indiscretion of children in the street."

The case of *Ratcliffe* v. *Speith* (95 Kan. 823) is quite in point. In that case the court said (at p. 825): "It is true that the defendants were driving at a moderate rate of speed, but care in this respect was not the full measure of their duty to persons passing along or across the street. It is true, also, that motorists may ordinarily assume that pedestrians or others using the street will exercise ordinary care. * * * Here there was a crowd of children engrossed in play. They could be seen for a considerable distance, and it was obvious, too, that their attention was upon the play rather than upon the possible approach of an automobile. Seeing that they were engrossed in play, it was the duty of defendants to sound the horn or give some suitable signal of their approach. While the speed of the automobile was moderate, it appears that the children did not see it and had no knowledge of its approach until the collision occurred. A blast of the horn or other warning signal would doubtless have arrested their attention and enabled the plaintiff to have avoided the collision and saved herself. The law requires that an automobile shall be provided with a suitable horn, bell or other signal, and when there is a crowd of children, or even adults, in a street who are apparently unaware of the approach of an automobile the least of the precautions that the motorist should take is to sound the horn and give them a warning of the danger and an opportunity to protect themselves."

In *Scotti* v. *Behsmann* (81 Hun, 604) plaintiff's intestate, a small boy, was crossing the street. The driver of an approaching vehicle gave no warning because of the fact that he thought he would not hit the boy in the ordinary course of things. Someone shouted to the boy and he ran in front of the defendant's horses and was killed. A recovery was permitted upon the ground that the driver was bound to give some warning to the child even though no collision would occur had the child acted with the same degree of care as an adult. In *Ratcliffe* v. *Speith* (*supra*) the court further said (at p. 826): "All know that children, impelled by the instincts of immaturity, are often heedless of danger, and hence motorists

are bound to exercise a degree of care and caution commensurate with this known characteristic and the circumstances of the situation. It is said that the operator of a ' car in a street where there are children may well be required to manage his car with reference to all the risks that may reasonably be expected, and among these may be reckoned the risks arising from the heedlessness and indiscretion of children in the street.' "

In *Thies* v. *Thomas* (77 N. Y. Supp. 276) the court properly charged the jury that: " No owner or operator of an automobile is, therefore, exempt from liability for a collision in a public street by simply showing that at the time of the accident he did not run at a rate of speed exceeding the limit allowed by law or the ordinances.  On the contrary,  *  *  *  he still remains bound to anticipate that he may meet persons at any point in a public street, and he must keep a proper lookout for them, and keep his machine under such control as will enable him to avoid a collision *  *  *.  If necessary, he must slow up, and even stop.  *  *  * This applies peculiarly when children of tender years are met." Concerning the duty of the chauffeur to exercise extreme care even in the middle of the block, as was the situation in the case at bar, the Court of Appeals said, in *Moebus* v. *Herrmann* (108 N. Y. 349): " He was bound to be watchful at all points, elsewhere as well as at the crosswalk,  *  *  *.  The grade was ascending and it is in evidence that the wagon could have been stopped before going the length of the horse and the child saved before the wheels reached him."

I think, therefore, that the jury was justified in finding the defendant's chauffeur. negligent in failing to give some warning to these little boys of his approaching truck.  Evidently the boys never knew of the truck being on the street until it was within six or seven feet of them, and when it was too late for the plaintiff to save himself from injury.

I do not think the plaintiff was chargeable with contributory negligence as matter of law.  He was then of the age of ten years, and the evidence was that before attempting to cross Eighty-eighth street from the north toward the south both the plaintiff and his companion looked both ways and saw no vehicle approaching.  Undoubtedly at this time the defendant's truck was parked in front of 210 West Eighty-eighth street.  The plaintiff and his companions had the right to play in the street.  Just prior to being run over by defendant's truck, plaintiff was being drawn by the colored boy and when nearly opposite plaintiff's home the colored boy turned toward the southerly side of the street. Before turning, the plaintiff looked both ways and saw no vehicle

approaching. He was not guiding the carts at the time. They were entirely under the guidance of the colored boy. The plaintiff was obliged to rely upon the judgment and care of the colored boy and even if the latter was negligent in not observing the approaching truck, his negligence was not imputable to the plaintiff. As soon as the plaintiff saw the truck he undertook to stop the cart by dragging his feet, but was unsuccessful. The jury might well have found, even though the plaintiff were an adult, that he exercised due care for his safety. But the plaintiff was only ten years of age, and was only bound to exercise that degree of care reasonably to be expected of one of that age. In *Jacobs* v. *Koehler Sporting Goods Co.* (208 N. Y. 416) the Court of Appeals held that the trial justice properly instructed the jury, concerning a boy fourteen years of age, that " The deceased was probably *sui juris*, as they call it; but that does not mean that he must exercise the degree of care that an adult person must exercise, but he was charged with the duty of exercising the measure of care and caution that is common and usual with boys of that age." In any event, I think the negligence of the plaintiff was for the jury. (*Costello* v. *Third Avenue R. R. Co*, 161 N. Y. 317.)

The appellant complains that the court failed to give the jury any instructions as to what would constitute negligence on the part of defendant's chauffeur or to give the jury a rule by which they could test the conduct of the boy and his playmates to determine whether or not he was guilty of contributory negligence. I think the charge, on the whole, was a fair one. No exception was taken to any part of it, and no request whatever was made. If the trial counsel for the defendant had deemed that the court had insufficiently instructed the jury, he should have requested such charges to be made as he might think would more adequately present the questions for determination. (*Texas & Pacific R. Co.* v. *Volk,* 151 U. S. 73.)

The judgment and order appealed from should be affirmed, with costs.

CLARKE, P. J., DOWLING, McAVOY and BURR, JJ., concur.

Judgment and order affirmed, with costs.