DONALD BETANCOURT, an Infant, by MICHAEL BETANCOURT, His Guardian ad Litem, et al., Respondents, *v.* HARRY WILSON, Appellant.

First Department, May 7, 1957.

*Joseph F. Lenihan* of counsel (*Frederick Mellor,* attorney), for appellant.

*Saul I. Radin* of counsel (*Harry Harris* with him on the brief; *Julian A. Hertz,* attorney), for respondents.

*Per Curiam.* On this record, the finding of negligence on the part of defendant was against the weight of the evidence and, furthermore, the testimony of infant plaintiff and his friends establishes that the infant plaintiff must have been guilty of contributory negligence as a matter of law. Since none of plaintiff's witnesses claims to have seen defendant's automobile before it struck the infant plaintiff, although the street through which the automobile passed was open to observation for a distance of over 200 feet, there is nothing to show the rate of speed or the other manner of driving on the part of defendant, except the simple fact that the automobile struck the infant plaintiff. Since the infant plaintiff was moving backwards, such testimony provides inadequate information to sustain liability against defendant. On the other hand, infant plaintiff and his friends uniformly testified that each just glanced up the street before participating in the particular play before the accident, but saw no automobile. The rule is well settled, that testimony to the effect that one has looked but did not see, what was there to be seen, is incredible as a matter of law. (*Unger* v. *Belt Line Ry. Corp.,* 234 N. Y. 86, 90; *Weigand* v. *United Traction Co.,* 221 N. Y. 39, 42; *Tosto* v. *Marra Bros.,* 275 App. Div. 686; *Von Der Geest* v. *Millinger,* 276 App. Div. 1093.) Accordingly, the infant plaintiff either did not look, when he said he did, or, if he looked, he saw and disregarded. In either event, he was guilty of contributory negligence.

The judgment in favor of Michael Betancourt should be reversed, and order setting aside verdict in favor of Donald Betancourt modified to eliminate granting a new trial, and complaint on behalf of both plaintiffs dismissed, with costs.

BERGAN, J. (dissenting). At Jackson Avenue in The Bronx, East 151st Street, a westbound one-way thoroughfare, comes to a dead end. Traffic moves north and south in Jackson Avenue

across the intersection and out of East 151st Street into the intersection. On June 17, 1954, plaintiff Donald Betancourt, then 16 years old, and three companions about the same age engaged in a ball game in this dead-end intersection.

While playing this game plaintiff was struck, or so a jury has found, by an automobile operated by the defendant in a southerly direction in Jackson Avenue. The vital question that the case presents is whether the infant plaintiff is to be denied recovery because of contributory negligence as a matter of law; or whether that issue is to be left to a jury.

The ball game was in some respects similar to baseball; base positions were used, but the ball was not struck with a bat; instead it was thrown against the corner curb of the southeast side of the intersection to be bounced back to the players.

Plaintiff was playing a combination of second base and short-stop. First base was fixed at the northeast curb of the intersection and second base was regarded as located on the west side of Jackson Avenue opposite this point, i.e., near the northwest angle of the dead-end intersection.

We are required to view the record in an aspect most favorable to plaintiff's case in reaching the questions of law involved on appeal although some of these facts are in dispute between the parties. It must be considered, therefore, that the game of ball had been in plain and obvious progress for about 10 minutes before plaintiff was struck by defendant's car; that a ball had been hit out in plaintiff's direction; that he took a short step and one long one to the left and was lifting his hand for the ball when he was struck by defendant's car.

It must further be considered that before the plaintiff moved to reach for the ball he had been standing in the open intersection three and one-half to four feet from the westerly curb of Jackson Avenue at a point unobstructed by parked cars or other obstacles to defendant's view, and that plaintiff was playing his position facing south, his back to the car that hit him.

He did not see the car before the impact. His practice was to "take a glance" around "before the batter is ready to hit." He took this "glance" at an unspecified time before the ball was hit and saw nothing. It seems a fair evaluation of the record to say he did not look around to his rear after the ball was in play and at the time he stepped to the left to catch it.

Some of plaintiff's companions, facing the other way, would have had a better view to the north in Jackson Avenue than plaintiff had; none of them saw defendant's car before it came in contact with plaintiff.

From defendant's point of view, driving southerly in Jackson Avenue required close attention; vigilance; alertness. He, himself, described it graphically: "there was kids in the street. I mean there were a lot of children in the street, and you couldn't go very fast."

He saw the game in progress at the East 151st Street intersection; he thought it was being played on the sidewalk with the ball thrown against a wall. The play was such, however, under his version of events, as to cause him to bring his car to a full stop. The accident occurred, he said, because plaintiff, coming backward from the sidewalk to the street in pursuit of the ball, backed into his motionless car. It was open to the jury to reach, as it did, a different resolution of what actually happened. It might seem somewhat improbable, for example, that the grave injuries sustained by plaintiff would have resulted from contact by an adolescent moving backward into a standing vehicle.

The jury could have considered within a permissible area of its fact-finding function that defendant had been alerted to a high demand of care by the number of children playing in Jackson Avenue; that he saw the ball game in progress, not on the sidewalk, but in the intersection itself; that he saw the plaintiff playing ball with his back toward his moving car and the game going on; and that his opportunity to observe the game and its players, including the ball hit in the direction of plaintiff, should have caused him to see the rising acceleration of danger in a street already dangerous.

Unless we are prepared to say that the act of a 16-year-old boy playing ball in a city street is itself contributory negligence as a matter of law, the case presents the customary and traditional aspects of a jury question.

Turning from the driver's viewpoint to that of the boy playing ball, it could be found within a permissible area of fact finding that the boys playing ball in this dead-end intersection might expect that drivers using Jackson Avenue in which many children were playing would be alert to a ball game in progress in the intersection; that plaintiff could rely on this alertness and upon his being seen by drivers with his back toward them; or that he might rely on being warned by the other players facing the other way of recurring traffic dangers. Reliance on a companion to give warning does not necessarily make the companion one's agent in the sense of assuming a responsibility for all that the companion does or fails to do.

The stepping to the left to get a ball in play by a player already in the street, without immediately looking behind him,

is essentially not much more dangerous than standing in the street waiting for the ball in the first place. Both acts belong to the same pattern; and we are led thus almost inevitably back to the more basic question whether in these circumstances it was contributory negligence as a matter of law for the plaintiff to play ball in the street.

What plaintiff is shown to have done in the method of stepping to catch the ball is consistent with ball playing; if what he did was negligent as a matter of law, the playing of the game itself must be deemed negligent.

Even in the cases of adults there has been a marked tendency to leave the issue of contributory negligence open as a question of fact and not to attempt to decide it as a matter of law except in those truly extraordinary cases where negligence is so open and shut an affair as to be put beyond debate.

In testing the obligation of an infant chargeable with some standard less than the adult's responsibility, the measure of the "lesser" degree of responsibility has been especially regarded as a fact question.

The words of LEHMAN, J., in *Camardo* v. *New York State Rys.* (247 N. Y. 111, 118), although addressed to the acts of a young child and dealing with the borderline area between *sui juris* and *non sui juris,* seem apposite as well to the care required of an older infant for his own safety. "Determination of the degree of care which may be expected of children", he said, "is based upon factors which the jury can weigh in the light of their experience at least as well as judges."

That older children and adolescents are not held to the same degree of care required of an adult to avoid imputation of contributory negligence seems to be a settled part of the New York rule of negligence. It is not always easy to measure the degree or to fix the point of difference.

The tendency, as it has here been noted, is to leave to the jury the question of contributory negligence generally in the absence of carelessness so patent as to be beyond dispute — as stepping without looking on railroad tracks or into other obvious areas of imminent peril.

A very carefully documented analysis of the New York rule on the measure of an infant's responsibility as it had been developed to that time was made by CULLEN, Ch. J., in *Jacobs* v. *Koehler Sporting Goods Co.* (208 N. Y. 416). After children "emerge" from the special protection of being considered *non sui juris* they become "responsible for their failure to exercise reasonable care for their own protection."

But this is a conditioned responsibility; they "are not required to exercise the degree of care required of an adult, but only to exercise the degree expected from one of its years" (pp. 418-419). There is no rule that this conditioned responsibility becomes an adult responsibility when a boy becomes 16. The rule is the other way; the boy 16 owes a greater degree of care than the boy 9; but still not that which an adult owes; and what, in any circumstance, may be more or may be less is for the jury.

"There doubtless comes a time in the life of a child", wrote the Chief Judge (p. 420), "when, though still at law an infant, it reaches such maturity that no distinction on account of age can be drawn in its favor. It is not necessary to determine what that time is. It is sufficient to say that, if a question of law and not of fact, the age is greater than that of deceased."

It is interesting and important to note that in the rationale of decision developed by Judge CULLEN, the statutory "lack of judgment and responsibility" on the part of immature persons, recognized by the State as a matter of public policy, was cited and relied upon. He made reference to the statute which then prohibited the employment without a certificate in a factory of "a child between fourteen and sixteen" and to the statute which then made misdemeanors for a person under 16 certain acts which for an adult would be felonies (pp. 420, 421). It cannot be open to doubt that this differential of protection on one hand and of responsibility on the other, has been deepened in the 44 years since 1913.

In 1890 the court had before it the question of contributory negligence of a girl 15 years old. (*Swift* v. *Staten Is. R. T. R. R. Co.*, 123 N. Y. 645.) The girl had waited for one train to pass in order to cross over tracks at a place which was not a public crossing, but had been commonly used, and then walked on the other track, was hit by a train and injured. She had looked in the direction from which the train which struck her had come before the first train passed, but said she did not see a train.

The rule was restated by O'BRIEN, J., on abundant authority, that the "infant * * * is bound only to exercise that degree of care which can reasonably be expected of one of its age", citing *Byrne* v. *New York Central & Hudson Riv. R. R. Co.* (83 N. Y. 620, 621).

The conclusion reached in *Swift* v. *Staten Is. R. T.* from the development of the rule and by reference to the authority of the cited cases, was that in the case of the 15-year-old girl there considered, it was "a question of fact" whether "this girl

was wanting in the exercise of a proper degree of prudence and care '' (p. 650). See, also, on this point *Costello* v. *Third Ave. R. R. Co.* (161 N. Y. 317, 322, 323); and upon the '' lower '' degree of care required of children see *Bowers* v. *City Bank Farmers Trust Co.* (282 N. Y. 442, 446, 447).

In dealing with the question of contributory negligence of a boy 12 years old who had coasted on a bicycle out of a private driveway into a public street where he was struck by a car, the driver of which testified he did not see the boy and that the bicycle had run into the car, the court, in *Locklin* v. *Fisher* (264 App. Div. 452), held that it was erroneous to charge the jury on the full and unmitigated effect of the statutory rule imposed on the driver of a vehicle leaving a private driveway to stop before entering the public street. The court observed that '' An infant is not guilty of contributory negligence if he has exercised the degree of care which may reasonably be expected from a child of like age, intelligence and experience '' (p. 454) and thus the statute must be explained to the jury with this rule as a background.

In *Hammer* v. *Bloomingdale Bros.* (215 App. Div. 308), the contributory negligence of a boy 10 years old riding on a soap box wagon in a public street in New York was held to be a fact question and not a law question. MERRELL, J., writing for this court, noted the situation, which is at least equally important in the case before us, that the driver of the defendant's vehicle '' was called upon to exercise extraordinary care in view of the fact that children of immature judgment were playing upon the street in front of him.'' (p. 313.)

Momentary forgetfulness of, or inattention to, a known danger may sometimes not be treated as negligence in the case of a child (65 C. J. S., Negligence, § 148, p. 792). For example, the holding of the court in Texas that the fact a girl was looking at and trying to catch a ball when she fell in a hole instead of looking where she was going was not necessarily to be held negligence, but this was regarded as a question of fact. (*Sullivan* v. *Trammell,* 130 S. W. 2d 310 [Tex.].)

It may not so confidently be said here, as Judge RIPPEY was able to say in *Gloshinsky* v. *Bergen Milk Transp. Co.* (279 N. Y. 54, 59) that the boy, walking on private property between a loading platform and the end of a truck, a place of obvious and perceived danger '' exercised no care at all '' for his own safety.

On the question of looking and seeing, even in *Weigand* v. *United Traction Co.* (221 N. Y. 39), the classic and frequently cited prototype of cases of the adult guilty of contributory

negligence for failing to see what was plainly in sight, the court declined to dispose of the case as a matter of law, but ordered a new trial. The chief utilization of this rule has been on railroad or trolley tracks; and even in such a case where the court went further to dispose of the whole issue as a matter of law because of a failure to look or to see, it was at the same time usually able to say as a matter of law there was no negligence established against the railway company. Illustrative of this is *Unger* v. *Belt Line Ry. Corp.* (234 N. Y. 86).

The cases where it can be held that an adult may not recover because he has been guilty of contributory negligence as a matter of law are unusual cases and they are certainly rare as applied to the use of public streets. As Judge WERNER noted with approval in *Eastland* v. *Clarke* (165 N. Y. 420, 426) the inference of negligence must be '' certain and uncontrovertible '' to be decided as a matter of law; and in the case of an infant plaintiff, as Judge ALLEN said long ago in *Thurber* v. *Harlem Bridge, M. & F. R. R. Co.* (60 N. Y. 326, 330 [1875]) the negligence of an infant must be '' clearly and conclusively '' established to preclude as a matter of law his right to recover.

The record before us is open at least to diverse interpretations on the degree of care required and used on the public street; and '' if there is any doubt '' on the inferences to be drawn from the facts, the contributory negligence of the infant '' must be submitted to the jury.'' (*Swift* v. *Staten Is. R. T. R. R. Co.*, 123 N. Y. 645, 650, *supra.*)

The order which in the infant's case set aside the verdict as inadequate and directed a new trial unless defendant stipulated to increase the amount thereof should be affirmed; the order which in the father's action denied the motion to set aside the verdict and the judgment thereon should be affirmed if a stipulation is filed in the infant's case as hereby affirmed; and, if no such stipulation is filed, the order and judgment in the father's case should be reversed and a new trial likewise directed in that case.

PECK, P. J., BREITEL, BOTEIN and RABIN, JJ., concur in *Per Curiam* opinion; BERGAN, J., dissents in opinion.

Order entered July 24, 1956, setting aside the verdict in favor of Donald Betancourt, modified to eliminate granting of a new trial, and judgment in favor of Michael Betancourt reversed and judgment is directed to be entered in favor of the defendant dismissing the complaint of both plaintiffs, with costs. Settle order on notice.