**Willis JONES, an infant by his Guardian ad Litem, Charlie C. Jones, and Charlie C. Jones, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 62 Civ. 3816.**

United States District Court
S. D. New York.

March 29, 1967.

Bassoff & Pollack, New York City, by Edward V. Whiting, Mineola, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., by Judith N. Stein, Asst. U. S. Atty., of counsel, for defendant.

## OPINION

**EDELSTEIN, District Judge.**

■ This action, brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, arises out of a collision between a post office truck and the infant plaintiff, Willis Jones. The action was tried by the court without a jury. The law to be applied is the substantive law of New York, 28 U.S.C. §§ 1346(b), 2674; Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); Landon v. United States, 197 F.2d 128 (2d Cir. 1952).

The accident occurred on August 27, 1962, at or about 1:45 p. m. The situs of the accident was West 114 Street, between 8th and 7th Avenues, Borough of Manhattan, City of New York. At the time of the accident, the block in question was concededly a play street and clearly marked as such. The defendant's driver, Robert Taylor, admittedly knew that the block was a play street and the infant plaintiff, Willis Jones, eight years of age at the time of the accident, knew that fact too. The testimony regarding the events leading up to the moment of impact is contradictory and presents sharp issues of credibility for determination by the court.

The mail truck was driven by Robert Taylor, an employee of the United States, acting within the scope of his authority. The driver was accompanied by an assistant, Wallace Bonaparte, who did not testify. The government represented that he was no longer in the employ of the Post Office Department but was presently with the armed forces in Korea. His deposition was never taken. Mr. Taylor testified that he parked the mail truck near 255 West 114 Street to make a delivery. He added that after completing the delivery he made a diligent effort to chase children away from the truck and checked his three mirrors on the vehicle. The right side mirror, however, was not set so that the whole right side of the truck could be seen. He then started the truck and proceeded slowly down the street. The accident occurred soon after the truck began to move from its parked position.

Different theories have been presented to the court as to how the accident occurred. The defendant contends either that the infant plaintiff was trying to hitch a ride by climbing on the side of the truck, or that the infant plaintiff was injured by running into the truck. Defendant's first theory is supported solely by the testimony of Mr. Sam Williams that he saw the infant plaintiff "* * * try to hitch a ride on the truck" by clutching the guard rail. Mr. Williams' testimony is unreliable. At the time those events took place he was preoccupied with his own child who was playing at a point which was in the opposite direction from where the accident occurred.

Defendant's second theory derives from the testimony of Mrs. Paige Edwards, one of plaintiffs' witnesses:

> "* * * he ran for the ball, and as he ran for the ball the truck was coming at the same time, not at such a speed, and he hit against the truck, and he fell down." T.R. 53; Post Trial Memorandum of Defendant, at p. 19.

The defendant, however, neglected to include Mrs. Edwards' next sentence:

> "The truck hit against him and he fell, and then I ran out to him."

This seeming conflict in Mrs. Edwards' testimony appears to be no more than a simple mistake in the light of her previous testimony during the trial that the mail truck hit Willis:

> "He was playing ball, and he was chasing the ball, and at the same time when the truck, the mail truck was coming down, and then he went to get the ball and he stopped down to pick up the ball, and it was because this mail truck hit him, and knocked him backwards under the righthand side, on the righthand side, and he went back under the bumper and the back wheel." T.R. 49.

Willis also testified that he was hit by the guard rail and that thereafter he found himself lying on the ground with

his legs under the truck. His cousin's testimony was generally consistent with Willis'.

■ At the time of the accident, the following regulation was in effect:

"Whenever authorized signs are erected indicating any street or part thereof as a play street, no person shall drive a vehicle upon any such street * * * except drivers of vehicles having business or whose residences are within such restricted area. Any such driver shall exercise the *greatest* of care in driving upon such street." Art. 7, Sec. 74, Traffic Regs. Dept. of Traffic, City of New York. (Emphasis added.)

The driver acknowledged that driving on a play street required the utmost care and caution. Even where a street is not officially designated a play street, a driver must exercise extraordinary care when children are at play. Hammer v. Bloomingdale Bros., Inc., 215 App.Div. 308, 213 N.Y.S. 743 (1st Dept. 1926).

■ The defendant's employees did not use the degree of care called for in the circumstances. The driver's assistant was under a duty to keep an adequate lookout. Regrettably he failed in that duty. The fact that the right-hand mirror was set so that the right side of the vehicle could not be seen meant that if the assistant were negligent in his duties the driver was in no position to compensate for such a lapse. It can be reasonably inferred that had the driver and his assistant been vigilant, exercising the degree of care called for in the circumstances, they would have seen Willis in time to prevent the accident. One must see what there is to be seen. Unger v. Belt Line Ry., 234 N.Y. 86, 136 N.E. 303 (1922); Weigand v. United Traction Co., 221 N.Y. 39, 116 N.E. 345 (1917); Goodman v. Brown, 164 Misc. 145, 298 N.Y.S. 574 (City Ct. Rochester 1937). The preponderance of the credible evidence impels to the conclusion that the defendant, by its employees, was negligent in the operation of its vehicle, thereby causing injury to the infant plaintiff, Willis Jones.

The cases cited by the defendant to show that its employees were not negligent are patently inapposite. They do not apply to a driver operating his vehicle on a play street while in use by children who, lulled into a sense of security by that sanctuary, are more vulnerable to the hazards of traffic. In Abbott v. Railway Express Agency, 108 F.2d 671 (4th Cir. 1940), the driver not only spoke to the injured boy and his companion but actually saw them in a place of safety before the injured boy was run over. Smiel v. United States, 147 F.Supp. 835 (N.D.N.Y.1957), involved a situation where in order to have seen the decedent the driver would actually have had to look under his truck. In Wallach v. R. Gray's Sons, Inc., 244 App.Div. 873, 280 N.Y.S. 79 (3d Dept. 1935), the injured infant ran into the defendant's truck by darting from the sidewalk past a parked car. Cantanno v. James A. Stevenson Co., 172 App.Div. 252, 158 N.Y.S. 335 (2d Dept. 1916), involved a child who ran into the hub of a wagon wheel which projected two inches over the curb.

■ Ball playing on the sidewalk and in the roadway is one of the purposes for which play streets were established. A child in a play street should feel free from the ordinary dangers of city traffic. Children in play streets are only expected to exercise slight care while there. Tamburrino · v. Sterrick Delivery Corp., 241 App.Div. 221, 271 N.Y.S. 765, 770 (1st Dept. 1934). The defendant has cited several cases purporting to illustrate acts of contributory negligence by infants. However that may be, those cases do not apply to the circumstances at bar. The preponderance of the credible evidence indicates that Willis was not contributorily negligent.

At the trial both parties called expert witnesses. The plaintiffs' witness was Dr. Milton Zurrow, Assistant Director of Radiology at Bellevue Hospital and a Diplomate in Radiology. The defendant's witness was Dr. Bernard Jacobs, Chief of Orthopedics at the Bronx Vet-

erans Hospital, Associate Attending Surgeon at the Hospital for Special Surgery, Assistant Attending Surgeon at the New York Hospital, Assistant Professor of Orthopedics at Cornell University and a Diplomate in Orthopedics.

Both physicians agreed that Willis Jones sustained a comminuted fracture of the left pubic bone, and that healing had occurred. They both likewise agreed that there was a separation of the pubic symphysis. Dr. Jacobs testified that this separation would produce local tenderness of a non-permanent nature and that there is no functional or disabling effect. Dr. Zurrow attempted to controvert this testimony only in the most general and unconvincing terms. Dr. Zurrow found that Willis Jones had an abnormal separation of the acetabular symphysis of the right ilium and ascending ramus of the right pubis which had healed. Dr. Jacobs indicated that the separation was not caused by the accident but was a normal condition and that by the time of the trial it had been filled with cartilage as part of the normal growth process. Dr. Zurrow found a healed separation of the right pubic ischial articulation. Dr. Jacobs testified that there is no such part of the anatomy. Both doctors found a distortion of the pelvic inlet, but Dr. Jacobs testified that such distortion has no functional effect and is not pain producing. They differed with respect to the extent of injury to the infant plaintiff's sacroiliac joint. Dr. Jacobs stated that he had difficulty in reading X-rays taken of the infant plaintiff's sacroiliac area due to distortion in the X-ray film caused by rotation of the pelvis. Dr. Zurrow, however, indicated no such difficulty. Dr. Jacobs suggested that some of the seeming widening of the right sacroiliac joint might well be due to the distortion in the X-ray film. While Dr. Jacobs found no permanent dislocation of the right sacroiliac joint, Dr. Zurrow found residuals of a dislocation which he considered to be partial. Dr. Zurrow concluded that the right sacroiliac joint was permanently unstable whereas Dr. Jacobs disagreed,

stating that only a complete dislocation could make the joint unstable. Dr. Jacobs could not state definitely whether or not the infant plaintiff would experience pain from his sacroiliac joint in the future but he did state that repeated injuries to the joint might result in pain or the early onset of arthritis. Dr. Zurrow, on the other hand, testified that any stress or strain to the joint would cause pain.

The disagreement of the doctors, however, does not becloud the fact that Willis sustained some injury. It is a matter of record that his injuries were sufficiently severe as to require his immediate hospitalization at Metropolitan Hospital from August 27, 1962, to September 18, 1962, for a comminuted fracture. The hospital record notes that Willis' habits and previous diseases were "Non-Contributory"; that he was given bed rest, conservative therapy and sedation; that his recovery was uneventful.

A consideration of the relative expertise of the doctors and their demeanor on the witness stand, together with the hospital record, leads to the conclusion that the infant plaintiff suffered a comminuted fracture of the left pubic bone, a separation of the pubic symphysis, a distortion of the pelvic inlet and a widening of the right sacroiliac joint proximately caused by the accident. Although Willis Jones testified that he has had pain recently, he does indulge in a range of sports activity, and upon his examination by Dr. Jacobs on May 4, 1966, he stated that he felt no pain. The only injuries which have been shown to be permanent are the distortion of the pelvic inlet which has no functional effect and no associated pain and some widening of the right sacroiliac joint. It has not been satisfactorily demonstrated, however, that those conditions will have any definite future effects as to pain and disability.

The plaintiff Charlie C. Jones, Willis' father, was not involved in the accident and was not guilty of contributory negligence in any way. There is no dispute

that the hospital bill in the amount of $748.00 is fair and reasonable.

The court now separately states its Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On August 27, 1962, at or about 1:45 p. m., a mail truck, No. 5045, owned by defendant United States of America, was parked near 255 West 114 Street, between 7th and 8th Avenues, in the Borough of Manhattan, City of New York, for the purpose of delivering mail.

2. The mail truck was operated by Robert Taylor, an employee of the defendant acting within the scope of his authority.

3. The driver was assisted by Wallace Bonaparte, also an employee of the defendant acting within the scope of his authority.

4. At the aforesaid time, West 114 Street between 7th and 8th Avenues was a play street.

5. At the aforesaid time, there were two stanchions at the entrance to the block in question designating the block as a play street.

6. Robert Taylor knew that the block in question was a play street.

7. At the aforesaid time Willis Jones, the infant plaintiff, was making use of the block in question as a play street.

8. Willis Jones knew that the block in question was a play street.

9. After making a delivery of mail, Robert Taylor entered the mail truck, started it, and began to drive it slowly down the street.

10. Robert Taylor did not have the right outside mirror adjusted so as to be able to view the right side of the vehicle.

11. Neither Robert Taylor nor Wallace Bonaparte maintained a vigilant lookout.

12. The mail truck struck Willis Jones while he was making use of the block in question as a play street causing part of his body to be run over by the right rear wheel of the truck.

13. Prior to the accident, Willis Jones was in good health, doing all the things boys of his age customarily do.

14. Willis Jones was confined to Metropolitan Hospital from August 27, 1962, to September 18, 1962, as a result of the above accident.

15. Willis Jones suffered a comminuted fracture of the left pubic bone, a distortion of the pelvic inlet, a widening of the pubic symphysis and a widening of the right sacroiliac joint.

16. No residual permanent pain producing or disabling effects have been demonstrated by a preponderance of the credible evidence.

17. The reasonable value of the hospital care furnished to the plaintiff was $748.00.

18. The plaintiff, Charlie C. Jones, is Willis Jones' father.

19. Charlie C. Jones had nothing whatever to do with bringing about the accident.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the matter in question.

2. The applicable law is the law of the State of New York.

3. The defendant owed a duty of the "greatest of care" to Willis Jones.

4. The defendant, through its employees, violated that duty by negligently operating its vehicle on a play street.

5. Such negligence was the proximate cause of Willis Jones' injuries which occurred in the accident of August 27, 1962.

6. Willis Jones was not contributorily negligent.

7. Charlie C. Jones was not contributorily negligent.

8. The damages sustained by Willis Jones and the expenses incurred for his care and treatment by his father were a direct result of the defendant's negligence.

9. By reason of the negligence of the defendant Willis Jones has sustained damages in the amount of

$8852.00, and is entitled to judgment in that amount.

10. By reason of the negligence of the defendant Charlie C. Jones has sustained damages for expenses incurred in the care and treatment of his son in the amount of $748.00, and is entitled to judgment in that amount.

So ordered.