JOHN A. GETTY, Respondent, *v.* THE TOWN OF HAMLIN *et al.*, Appellants.

*Court of Appeals, April* 21, 1891.

1. *Evidence.   Negligence.*—Evidence of repairs to the bridge subsequent to the accident is inadmissible for the purpose of proving negligence on the part of the defendants.
2. *Same.*—Nor is the statement of the commissioner that he made such repairs because he deemed that they were needed, competent.

Appeal from judgment of the general term of the supreme court, entered on an order which affirmed a judgment in favor of plaintiff, entered on a verdict.

*Cassius C. Davy,* for appellants.

*J. D. Decker,* for respondent.

PARKER, J.—This action was brought to recover damages which the plaintiff insists were occasioned by a defective highway. At the point in question Sandy Creek is on the boundary line between the town of Hamlin, in the county of Monroe, and the town of Kendall, in the county of Orleans, over which a bridge is constructed which constitutes a part of the highway leading from one town into the other, and because of such situation it is asserted that by statute the towns are jointly liable to keep such bridge and its approaches in repair, and for a failure to perform that duty they are liable to respond in damages for such injuries as may have been occasioned because of an omission to perform such obligation.

The complaint alleges that on and prior to the 26th day of April, 1884, the date of the happening of the accident, the highway on the north end or side of the bridge was

greatly out of repair, the abutments of the bridge having become dilapidated and fallen out so that the road-bed in the highway supported and kept in place by the abutments was caved in, broken out and greatly impaired; that there were great holes in the highway made by the earth caving in and sliding out of the road-bed, caused in part by the impairment of said abutments, so that said bridge and approaches were in an unsafe and dangerous condition for travel. The answer denied that the approaches to the bridge and the bridge were in an unsafe and dangerous condition for public travel at the time of the accident, and that question was sharply litigated on the trial.

As to the happening of the accident, the plaintiff testified: " Before I got to the bridge I observed on the west side of the road a pile of stave bolts piled up perhaps six feet or thereabouts. Before I passed the stave bolts I saw the bridge, and saw as I came opposite this pile of stave bolts that the bank had slid off on the east side of the enbankment at the north end of the bridge. I reined my horses to one side of the road as far as I could, and I was driving with the greatest of care to avoid this hole, because the approach to the bridge is very narrow. As I approached the stave bolts I came opposite a pile of sand piled over in the lot; white sand, lake sand, I suppose, on the west side of the road, on the north side of the creek. Just then my off mare shied violently and suddenly against the other one and crowded her across on the east side of the road and she stepped her leg into this hole and they both sprang on the bridge on the jump, and the wheel came against the bridge timber, which was exposed six or eight inches. I remember nothing more. I couldn't tell how wide the road-bed, the natural roadway in its intact condition was; but the bridge where you go on is thirteen feet; the bridge is thirteen feet between the railing; the road widens out as you go north. I should say the cave-off on the east side of the road was within six or eight inches of the track made by the wheel. The bunt

beam of the bridge was exposed inside of the east railing perhaps two feet." He also testified that on the east side of the bridge, " there was no guard ; no railing of any kind."

Against defendants' objection and exception the plaintiff was further permitted to show that subsequent to the accident guards were erected, where they were placed, and whether the commissioner deemed their erection necessary as will appear from the following questions and answers : " Q. These guards that are there now are put upon this retaining wall, are they not ? A. Inside of the retaining wall, between the bridge and the retaining wall; just inside of the railing ; they are not fastened into the retaining wall. Q. You put up these guards on the east side and on the west side because you deemed guards were needed there, did you ? A. Yes, sir."

Again plaintiff's testimony tended to show that the retaining wall on the east side had become out of repair and the upper part of it fallen off, thus permitting the earth to slide down, resulting in the holes or depressions complained of. This evidence was controverted by witnesses on the part of the defendants, and against defendants' objection that the evidence was incompetent and immaterial the plaintiff was further permitted to show that after the happening of the accident a new abutment and retaining wall was built in the place of the wall which the plaintiff contended was so out of repair as to cause the formation of the holes and depressions in the road-bed complained of.

The witness was also asked : " Q. The retaining wall which you put on the east side, you put there because you deemed one was needed," to which, against defendants' objection and exception, the plaintiff, by direction of the court, answered : " Yes, sir; the old abutment under the north end of the bridge we took down because it was out of repair, and built a new one ; I deemed a new one was needed for freshets ; I built a new abutment there because I deemed a new one was needed."

29

It has been so frequently determined by this court that evidence of this character is not admissible against a defendant for the purpose of proving negligence that further comment need not now be made. Corcoran *v.* The Village of Peekskill, 108 N. Y., 151; 13 N. Y. State Rep., 105; Dougan *v.* Champlain Co. 56 N. Y., 1; Baird *v.* Daly, 68 Id. 547. And, as Judge Earl remarks in Corcoran's case, "While such evidence has no legitimate bearing upon the defendant's negligence or knowledge, its natural tendency is undoubtedly to prejudice and influence the minds of the jury."

Our attention has been called to other rulings of the trial court which the defendants assign for error, but, as the rulings already considered demand a reversal of the judgment, they need not be discussed.

The judgment should be reversed.

All concur, except BRADLEY and HAIGHT, JJ., not voting.

---

### NOTE.

The condition of a switch after the accident may be shown, notwithstanding intermediate repairs, if they do not affect the particular defect. Stodder *v.* N. Y., L. E. & W. R. R. Co., 50 Hun, 221.

Evidence of reconstruction of the railroad crossing, after accident, is competent on the question of the ownership of such crossing, where such issue is raised by the pleadings. Spooner *v.* D., L. & W. R. R. Co., 115 N. Y. 22.

The subsequent use of a capstan bar, to supply the place of the defective appliance, may be shown.

Proof of subsequent changes in the place of the accident is competent to show inaccuracy in diagrams presented on the trial. McRickard *v.* Flint, 114 N. Y. 222.

Evidence of repairs made shortly after the accident is incompetent to show that the party charged must have known of the defect before the accident. Corcoran *v.* Village of Peekskill, 108 N. Y. 151.

This rule, *it seems*, does not prevent evidence of the condition of the place, which is material for some legitimate purpose, even though it incidentally and argumentatively involves the fact that the party charged has, by making repairs thereon, by so much confessed his dereliction. Stone *v.* Town of Poland, 58 Hun, 1.