ANNIE McGARR vs. NATIONAL & PROVIDENCE WORSTED MILLS.

24 447
24 478
24 447
25 314

PROVIDENCE—OCTOBER 13, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ. ·

(1) *Parent and Child. Loss of Service.*

While the father, rather than the mother, has the implied right at common law to the benefit of his minor children's labor while they live with and are supported by him, yet a widow who supports herself and children with the aid of their services has the same control over their earnings, and is entitled to recover for the loss of services of the minor in consequence of an injury negligently caused to the child. The right of recovery is based both upon the right to service and upon the liability to support the person injured.

(2) *Parent and Child. Right to Services of Minor.*

An arrangement between parents of a minor, that the mother should manage the affairs of the house ⬤ should receive the earnings of the . minor, amounted to a reli ⬤ t by the father of his right to the minor's services and an as ⬤ thereof to the mother, and entitled the latter to maintain an action for loss of services prior to the death of the father. ·

(3) *Evidence. Negligence.*

Evidence as to the manner in which a belt, which was the cause of the injury complained of, was repaired subsequent to the accident is inadmissible to show antecedent negligence, and its admission is ground for a new trial.

(4) *Negligence. Requests to Charge.*

In an action for negligence, alleging injury from the breaking of a belt, a request to charge the jury that "if the belt broke and passed over the girl's head without hitting her the matter of lacing and inspection is not material" should have been granted.

(5) *Parent and Child. Loss of Society of Minor.*

In an action brought by a parent to recover for loss of services of a minor caused by defendant's negligence, damages for loss of the society of the minor cannot be recovered.

TRESPASS ON THE CASE for negligence. Heard on petition of defendant for new trial, and petition granted.

TILLINGHAST, J.   This is an action of trespass on the case

for negligence, and is brought to recover damages for the loss of service of the plaintiff's minor daughter, Sarah McGarr, and also to recover for the expenses incurred by the plaintiff for medicines, medical attendance, and nursing, occasioned by reason of personal injuries sustained by said Sarah while in the employ of the defendant corporation.

Said Sarah McGarr, by her father and next friend Owen McGarr, had previously brought suit against the defendant to recover damages for personal injuries growing out of the accident in question (see 22 R. I. 347), and had obtained a substantial verdict therein ; and thereafterwards the mother, Annie McGarr, brought this action to recover for the consequential damages suffered by herself on account of said injuries to her daughter ; and upon trial thereof, a verdict was rendered in her favor for the sum of $9,500.

The case is now before us upon the defendant's petition for a new trial upon the grounds (1) that the verdict is against the law and the evidence ; (2) that the presiding justice erred in admitting certain evidence against the objection of the defendant, and also erred in refusing to admit certain evidence offered by the defendant ; (3) that the presiding justice also erred in his instructions to the jury ; and (4) that the damages awarded by the jury were excessive and unjust.

At the trial of the case all of the questions involved, including the question of the defendant's negligence, were considered as fully as if there had been no prior verdict and judgment in favor of the daughter, Sarah McGarr.

The proof shows that she was employed by the defendant as a spinner, and at the time of the accident, January 6, 1899, was engaged in tending a spinning-frame in No. 6 mill of the defendant company. The spinning-frame was run by an overhead belt some ten feet from, and substantially parallel with, the floor. The claim of the plaintiff is that this belt, by reason of its improper and insufficient lacing, suddenly broke ; and that one end of it struck her daughter upon the side of her head, inflicting severe injuries from which major hysteria developed, together with other physical ailments of a very serious and permanent nature.

Owen McGarr, the father of Sarah and the husband of the plaintiff, died on November 5, 1900.

Defendant's counsel starts out with the broad contention that the action will not lie, on the ground that the plaintiff, as the mother of said Sarah, is not entitled to maintain it : first, because she was not bound to support her child Sarah ; and second, because the right of action for loss of service, having become vested in the father during his lifetime, could not become divested and vest in the mother after his death.

Having taken this position at the jury trial, the defendant objected to the introduction of any testimony as to damages. And as the trial court overruled this objection, subject to exception by the defendant, the first question which logically presents itself is whether the action will lie.

(1)   That at the common law the father is entitled to the benefit of his minor children's labor while they live with him and are supported by him, there can be no doubt.   His right to their services, like his right to their custody, rests upon the parental duty of maintenance, and is said to furnish some compensation to him for his own services rendered to the child.   Schouler's Dom. Rel. 5th ed. § 252 ; *Brown* v. *Smith,* 19 R. I. 319.

The mother, on the other hand, not being thus bound for the maintenance of her minor children, has no implied right, at the common law, to their services and earnings.

The common-law doctrine as thus briefly stated, however, has been greatly relaxed by modern decisions in this country, if not in England ; and the strong tendency of the courts in this country, as well stated by Field, C. J., in *Horgan* v. *Pacific Mills,* 158 Mass. 402, " is to give to a widow left with minor children, who keeps the family together and supports herself and them with the aid of their services, very much the same control over them and their earnings during their minority, and to impose on her to the extent of her ability much the same civil responsibility for their education and maintenance, as are given to and imposed on a father."   The chief justice then stated the opinion of the court in that case to be as follows :   " We are of opinion that when a minor

child lives with its mother who is a widow, and the child is supported by the mother and works for her as one of the family, the mother is entitled to recover for the loss of services of the child and for labor performed and expenses reasonably incurred in the care and cure of the child so far as they are the consequences of an injury to the child negligently caused by the defendant."

This statement of the law is abundantly supported by the authorities cited in the opinion, and by numerous others which might be added.    See Am. & Eng. Ency. of Law, 1st ed. vol. 17, p. 387, and cases collected in notes 1 & 2 ;  *Drew* v. *R. R. Co.*, 26 N. Y. 49 ;  *McElmurray* v. *Turner*, 86 Ga. 215, at p. 219 ;  2 Kent Com. 205–6 ;  *Nightingale* v. *Withington*, 15 Mass, 274 ;  *Natchez and Jackson, etc., R. R. Co.* v. *Cook*, 63 Miss. 38 ;  *County Commissioners* v. *Hamilton*, 60 Md. 340 ;  *Kennedy* v. *N. Y. Central etc., R. R. Co.*, 35 Hun. 186 ;  *Moritz* v. *Garnhart*, 7 Watts, 302 ;  *Furman* v. *Van Sise*, 56 N. Y. 435 ;  *Matthews* v. *Ry. Co.*, 26 Mo. App. 75.

(2)    It being well settled, then, that a widow may maintain an action for loss of services of her minor child, the next question which arises is whether the plaintiff can maintain her action, the cause of which accrued prior to the death of her husband.

The answer to this question, in so far as it relates to the plaintiff's right to recover for loss of service, etc., prior to the death of the father, depends primarily upon the relation which existed between the mother and daughter at the time of the accident as to the right of service ; that is, whether the mother or the father of the girl at that time was legally entitled to her services.    And as the father was presumably entitled thereto, it devolves upon the plaintiff to prove that he had in some way relinquished his right or conferred it upon her.    While the right to the child's services is naturally in the father, he can doubtless surrender this right to another by contract or otherwise, in various ways, as (a) by binding the child as an apprentice, *Ames* v. *Union R. R Co.*, 117 Mass. 541 ;  (b) by allowing another person to so act that he stands *in loco parentis*, *Whitaker* v. *Warren*, 60 N. H. 26.

This principle is fully recognized in *Morse* v. *Welton*, 6 Conn. 547, where it was held that the right of a parent to the services of his minor children "is bottomed on his duty to maintain, protect, and educate them. . . . But this right and this duty may be transferred to another, and may be relinquished to a child." The law doubtless is, however, that the father cannot *permanently* transfer his rights and duties to another except by deed. *State* v. *Libbey*, 44 N. H. 321.

The testimony upon which the plaintiff relies to show that the services of Sarah belonged to her at the time of the accident is to the effect that the plaintiff is and long has been the real head of the family; that she owns the property, takes care of the family, and pays the bills ; and that, by express direction from the father in his lifetime, she was entitled to and did receive all of the earnings of the daughter Sarah. She employed the physician who has attended the daughter since the accident, and is personally responsible to him for his services. Dr. O'Keefe testifies that he rendered his services at the request of the mother ; that the night he was called he saw the case would be prolonged, and he had a talk with the mother and she told him she wanted him to attend her daughter and would see him paid, and that his services have been charged to her. The testimony further shows that the father had no property, and no income except his current earnings.

In view of this state of the proof, plaintiff's counsel contends that the wages of Sarah were the property of the mother, for the recovery of which she could have maintained an action. In other words, the contention is that the arrangement and understanding between the father and mother of Sarah as to her wages, taken in connection with the other facts aforesaid, amounted to a relinquishment by the father of his right to the daughter's services and earnings and an assignment thereof to the mother, and hence that the latter can recover for the loss thereof.

We think this is so. It is true, the evidence fails to show the making of any formal agreement between the plaintiff and her husband as to the child's services and earnings ; but

as it appears that there was an understanding between them to the effect that they belonged to the mother, and as it also appears that the mother managed the affairs of the family, owned the property, and contracted and paid the bills, we think this is sufficient to entitle her to maintain the action, not only for loss of services, etc., since the death of the father, but also prior thereto. If the case were one which simply showed the payment to the mother of the child's wages, by direction of the father, we should not deem this sufficient to enable the mother to maintain an action of this sort, as it is matter of common knowledge that for prudential and other reasons this is frequently done. But where, as in the case at bar, there is other evidence which, taken in connection with this, shows a relinquishment by the father of his right to the child's services and an assumption of his duties to the child by the mother, then she can maintain the action. In a leading New York case upon assignment of claim by husband to wife, the wife was allowed to collect, in an action for the recovery of the value of services, for work and labor done by plaintiff's husband and assignor for the defendant. In rendering its opinion the court said : " The defendant contends that the plaintiff's title to the claim in suit is invalid because acquired by assignment directly from the husband. While a different rule might prevail if the rights of the husband's creditors were concerned, transfers of personalty made by husband to wife are sustained as valid between the parties and choses in action are held to pass by delivery from one to the other without a written assignment." *Seymour* v. *Fellows*, 44 N. Y. Superior Ct. 126. This case was affirmed upon an appeal in an opinion written by Danforth, J., who said : " The appellant objects that the assignment of the cause of action having been made directly to the plaintiff by her husband is void. The rights of creditors are not in question, and we think the court below properly overruled the objection." *Seymour* v. *Fellows*, 77 N. Y. 179.

In *Harper* v. *Luffkin*, 7 B. & C. 387, the father was allowed to recover for the seduction of his married daughter, although her husband had not consented to his wife becoming the ser-

vant of her father.   In delivering the opinion of the court,. Lord Tenterden, C. J., in speaking of the husband, said : " He may put an end to that relation of master and servant ; but unless he interferes, it by no means follows that such a relation may not exist, especially as against third persons who are wrong-doers.   It appears to me that such a relation might, and did, in fact, exist in this case ; and that, in the absence of any interference by the husband, it is not competent for the defendant to set up his rights as an answer to the action."

In *Parker* v. *Meek*, 35 Tenn. 29 (3 Sneed), the mother was held entitled to recover for loss of services consequent upon the seduction of her daughter, who was twenty-four years of age, although the father of said daughter was living at the time of the seduction.   In delivering the opinion of the court, McKinney, J., said : " Where the action is case, it is no more necessary in the case of a daughter of full age than in that of a minor that she should have been living in the family of the parent at the time of the seduction.   Nor is it any more important in the one than in the other, who was entitled to or enjoying her services at the time of the injury.   The only inquiry of importance in either case is, on whom has the consequential injury fallen ?   And such person, whether father, mother or other person standing *in loco parentis*, is entitled to legal redress in the present form of action.   .   .   .   The present action may be maintained by the mother, although by reason of the fact that the father was living at the time of the seduction and the seduced was at the time a member of his family and rendering service to him, the mother was not then nor could she be in law entitled to the services of the daughter.   But the latter having remained with the mother, after the father's death, in the presumed relation of servant, and the trouble and expenses of lying-in having fallen upon her, the action is maintainable upon this ground."

In *Sargent* v. *Dennison*, 5 Cow. 106, the mother, who was a widow, bound her minor daughter by indenture as a servant until she should be eighteen years of age.   During that period the daughter was seduced and the indenture cancelled.

Thereupon the daughter returned to her mother, who then sued for seduction in an action of the case. The court held that upon the daughter's return, the relation of master and servant was restored and that it was not material who was entitled to the services at the time of the seduction, but "the real inquiry is upon whom has the consequential injury fallen, the expense attending her confinement and the loss of her services."

In neither of these cases was there any claim that the mother had actually acquired the right to the service of the child at the time of the injury, as is shown in the case at bar. Indeed, the right of recovery in those cases seems to be based upon a consequential injury independent of any such considerations. The last-named case was followed in *Ingersoll* v. *Jones*, 5 Barbour, 661 ; *Bracy* v. *Kibbe*, 31 Barbour, 273 ; *Gray* v. *Durland*, 50 Barbour, 100 ; *Furman* v. *Van Sise*, 56 N. Y. 435.

An examination of the numerous cases bearing upon the general question involved shows that the consensus of opinion is to the effect that, in cases of wrongful injury, whoever by reason of right or relationship suffers consequential damage thereby and may be liable for necessary expenses consequent upon such injury is entitled to recover against the wrong-doer the amount of such damages and necessary expenses. The right of recovery is based both upon the right to service and upon the liability to support and maintain the person injured where the result of the injury may be to render the person injured a public charge. The right to such recovery, in so far as it is based upon the liability to support the person injured, rests upon the pauper statutes, so-called, beginning with the 43rd Elizabeth, which is as follows :

Chapter 2, section 7. "And be it further enacted that the father and grandfather, and the mother and grandmother, and the children of every poor, old, blind, lame and impotent person, or other person not able to work, being of sufficient ability, shall, at their own charges, relieve and maintain every such poor person in that manner and according to that rate as by the justices of the peace of that county, where such per-

son, sufficient persons dwell, or the greater number of them, at their general quarter sessions shall be assessed, upon pain that every one of them shall forfeit twenty shillings for every month which they shall fail therein."

Our own pauper statute, Gen. Laws R. I. cap. 79, §. 5, is a practical re-enactment thereof and is as follows :

Sec. 5.   "The kindred of any such poor person, if any he shall have, in the line or degree of father or grandfather, mother or grandmother, children or grandchildren, by consanguinity, or children by adoption, living within this state and of sufficient ability shall be holden to support such pauper in proportion to such ability."

A number of courts have upheld the right of one standing *in loco parentis* to a child to recover for loss of services of such child, resting such right upon the liability of such person for the maintenance of the child under statutes similar to 43 Elizabeth.   Thus in *Moritz* v. *Garnhart, supra,* the court said of a grandparent—and in that case it is pertinent to note that both the mother and putative father of the child were alive :—"He is indeed not a parent but is chargeable by the poor laws with the duty of one.   The rights of a parent are pupilary, and as they are given for the benefit of the child the person in the exercise of them must necessarily have a correlative remedy for their infraction."

In *Mathewson* v. *Perry,* 37 Conn. 435, the court said :   "Our statute concerning the support of paupers by relatives imposes the obligation to provide for children alike on father and mother, making each liable if of sufficient ability.   (Gen. Stat. Tit. 50, sec. 40.)   The provisions of this statute are taken substantially from the 43rd Elizabeth.   If the right to receive the earnings of minor children, which is conceded to the father, be made to rest on the liability of the father for their support, the mother having the same liability should be entitled to the same right."   See also *Hammond* v. *Corbett,* 50 N. H. 501 ;   *Whitaker* v. *Warren,* 60 N. H. 26 ; *Pacific R. R. Co.* v. *Jones,* 21 Colo. 347.

The uncontradicted evidence in the case at bar shows that the plaintiff has supported, cared for, and nursed her said

daughter Sarah since the happening of the accident in question, and also that she has lost the benefit of her services during all of said time.    And we are of the opinion, and therefore decide, that, upon the facts and law as above stated, the rulings of the trial court, whereby the plaintiff was permitted to introduce evidence of loss of services, etc., from the date of the accident, were correct and should be sustained.    The exceptions to such rulings are therefore overruled.

(3)    Amongst the testimony which the plaintiff was permitted to introduce, subject to defendant's exception, bearing upon the question of the defendant's negligence in causing the accident, was the following, viz. :    She was permitted to prove the manner in which the belt which broke and struck the daughter was subsequently repaired.    The witness Joseph Higginbottom, after having testified that at the time when the belt broke there was only one row of holes for the lacing in each end where it parted, was asked the following question :    "Q. What did Mr. Smith do with the belt when he fixed it ?    A.    He punched holes over again on each end of the belt.    Q.    When he punched them over again, how many rows of holes were there on each side ?    A.    Two rows." Counsel for defendant objected to this, as it took place after the accident, saying :    " They may have put on a new belt and done a great many things suggested by this accident, but you cannot put in testimony as to what occurred afterwards. The question is whether this belt at the time was proper— that is all.    Sometimes an accident may happen, and that may suggest for the first time that something else might be done." After considerable discussion by counsel upon both sides, the court ruled that the testimony was admissible.    Last question read to witness, as follows :    "Q.    When he punched them over again, how many rows of holes were there on each side ?    A.    Two rows of holes on each side.    Q.    On each side of what ?    A.    Of the belt."

While there has been some difference of opinion in the courts of the several States upon the question whether it is competent for a plaintiff in an action of this sort to prove that changes were made after an accident, looking to the im-

provement and safety of the appliance or structure causing the injury, it is now the "well settled rule of law," as said by Rogers, J., in delivering the opinion of this court in the recent case of *Morancy* v. *Hennessey*, 24 R. I. at p. 209, "that evidence of precautions against further accidents taken after an accident, is not competent to show antecedent negligence."

In *Morse* v. *Ry. Co.*, 30 Minn. 465, the question here involved was fully considered, and, notwithstanding several previous decisions of the court to the contrary, it squarely and strongly took the ground that such evidence was not only inadmissible, but that its admission was sufficient ground for a new trial. The court said : "But on mature reflection, we have concluded that evidence of this kind ought not to be admitted under any circumstances, and that the rule heretofore adopted by this court is on principle wrong ; not for the reason given by some courts, that the acts of the employes in making such repairs was not admissible against their principals, but upon the broader ground that such acts afford no legitimate basis for construing such an act as an admission of previous neglect of duty. A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence."

In *Corcoran* v. *Peekskill*, 108 N. Y. 151, Earl, J., in delivering the opinion of the court, used the following language, which is very pertinent to the case at bar : "After an accident has happened it is ordinarily easy to see how it could have been avoided ; and then for the first time it frequently happens that the owner receives his first intimation of the defective or dangerous condition of the machine or structure

which caused or led to the accident. Such evidence has no tendency whatever, we think, to show that the machine or structure was not previously in a reasonably safe and perfect condition, or that the defendant ought, in the exercise of reasonable care and diligence, to have made it more perfect, safe, and secure. While such evidence has no legitimate bearing upon the defendant's negligence or knowledge, its natural tendency is undoubtedly to prejudice and influence the minds of the jury. Hence in this court, and generally in the Supreme Court, it has been held erroneous to receive such evidence."

The recent Pennsylvania case of *Baron* v. *Iron Company*, decided in April, 1902 (51 At. Rep. 979), discusses the question very fully and arrives at the same conclusion, stating, in summing up, that : "To the same effect are the decisions of nearly every State in which the subject has been considered." And this statement is well fortified by the numerous cases cited. See also *Corcoran* v. *Peekskill*, 108 N. Y. 151, reversing judgment for plaintiff ; *Getty* v. *Town of Hamlin*, 127 N. Y. 636, reversing judgment for plaintiff ; *Payne* v. *Ry. Co.*, 9 Hun. 526 ; *Nalley* v. *Hartford*, 51 Conn. 524 ; *Ely* v. *Ry. Co.*, 77 Mo. 34 ; *Hudson* v. *Ry. Co.*, 59 Iowa 581 ; *Hewitt* v. *Street Railway*, 167 Mass. 483. See also cases collected in "Negligence Rules, Decisions and Opinions," by Edward B. Thomas, pp. 589–93, Title, "Subsequent Acts and Statements."

Of course the main purpose of the evidence introduced, as to the change in the manner of lacing the belt in question after the accident, was to show a recognition by the defendant of its negligence in not having properly laced it before the accident. And that such evidence might very naturally have been so taken and construed by the jury there can be no doubt. Its admission, therefore, was reversible error ; *Graham* v. *Coupe*, 9 R. I. 478 ; *Tourgee* v. *Rose*, 19 R. I. 432 ; *Kolb* v. *Union Railroad Company*, 23 R. I. 72 ; *Corcoran* v. *Peekskill*, 108 N. Y. 151.

But plaintiff's counsel argues in his brief that the testimony in question "was proper as showing the condition of the

joint at the time it broke, and explaining why it broke, and as corroborating the testimony of the witnesses Higginbottom and Sarah McGarr to the effect that this 'section-hand' who had charge of these belts was accustomed to make joints and lace them with only one row of holes punched upon either side."

Doubtless it did show, or strongly tend to show, why, in the judgment of the defendant's servant who repaired it, it was defectively fastened together; but, as already suggested, this knowledge might have been and probably was gained by reason of the accident, and hence cannot properly be attributed to the defendant before the accident happened. Its showing the condition of the belt at the time it broke and explaining why it broke, as argued, is not apparent; for at the time it broke it was, according to the testimony produced by the plaintiff, in a different condition, namely, there was but one row of holes in each end of the belt where it was laced, whereas afterwards a second row of holes was punched in each end thereof and two rows of lacing inserted.

As to the testimony being proper as corroborating the testimony of the witnesses Higginbottom and Sarah McGarr, as argued, it is sufficient to reply that we know of no rule of evidence which permits a witness to be corroborated in this manner.

Plaintiff's counsel further argues that: "At all events, in view of the other testimony in the case, the admission of this testimony was harmless to the defendant, and so is no ground for a new trial." As already intimated, we cannot agree to this contention. On the contrary, we are of the opinion that it was very prejudicial to the defendant, and that its admission was such error as compels the granting of a new trial. The exception to the admission of the testimony now under consideration is therefore sustained.

A number of other exceptions were taken by the defendant to the admission and rejection of testimony during the trial; but an examination thereof fails to satisfy us that any of them are tenable, or that they are of sufficient importance to require special consideration.

(4)    There is an exception to the refusal of a request by the de-
fendant to charge the jury, however, which we think should
be sustained.  We refer to the fourth request, which was as
follows : "IV.  If the belt broke and passed over the girl's
head without hitting her, the matter of lacing and inspection
is not material."   This request should have been granted.
The only claim which the plaintiff alleges and declares upon,
and the only one which the evidence tends to sustain, and
hence, of course, the only one upon which she can recover, is
that the belt broke and struck the girl, and thereby caused
the injury complained of.   It therefore necessarily follows
that if she was not hit by the belt the action cannot be main-
tained.   This exception is therefore sustained.

(5)    There is also an exception by the defendant to the grant-
ing of a request made by the plaintiff to charge the jury to
the effect  that damages might be awarded for loss of the
society of the child, caused by the accident.   The court in-
structed the jury that if the plaintiff lost the society of the
child "through the wrongful act of another, she would be
entitled to recover for that."   This was error.   In an action
of this sort the proper measure of damages is the pecuniary
value of the child's services from the time of the injury until
it attains its majority, less its support and maintenance, to-
gether with the necessary costs and expenses incident to the
care and cure of the child, such as those for medical and sur-
gical attendance.   Sedgw. on Dam., 7th ed. vol. 2, p. 520,
note (b), and cases cited.   But the jury are not at liberty to
consider the fact that the plaintiff has been deprived of the
comfort and society of the child, nor can they consider any
physical or mental suffering or pain which may have been
sustained by the parent by reason of the injury to the child.
*Louisville, &c., Ry. Co.* v. *Rush*, 127 Ind. 545 ; *Oakland
Ry. Co.* v. *Fielding*, 48 Pa. St. 320 ; *Cowden* v. *Wright*, 24
Wend. 429.   In short, the measure of damages in such a case
is the same as that which obtains in a case brought by a
master for the loss of services of his servant or apprentice.
It is therefore practically a business and commercial question
only, and the elements of affection and sentiment have no

place therein.   Moreover, in the case at bar, the plaintiff does not allege in her declaration that any damages were sustained by reason of the loss of the society of her daughter, but only that she sustained damages by reason of having been deprived "of *the earnings and income and services of her minor daughter and servant,*" and in nursing and caring for her, as aforesaid.

In actions for the seduction of a daughter, and for the alienation of the affections of a wife, a different rule doubtless prevails, and damages may be recovered for the disgrace and humiliation brought upon the parent in the former class of cases in addition to those sustained by loss of service— Cooley on Torts, 2d ed. 271 ; 2 Greenleaf on Ev., 16th ed. § 579 ; Sutherland on Damages, 2d ed. vol. 3, § 1283—and for loss of the society and affection of the wife in the latter class.   The defendant's exception to that part of the charge referred to is therefore sustained.

As we have come to the conclusion that a new trial must be granted, there is no occasion for us to consider the other grounds upon which the defendant's petition is based, namely, that the verdict is against the evidence and that the damages awarded are excessive.

The verdict is set aside, and a new trial granted.   Case remitted to the Common Pleas Division for further proceedings.

*J. W. Hogan and P. S. Knauer,* for plaintiff.

*Walter B. Vincent and Huddy & Easton,* for defendant.