**Joseph A. D'AMBRA and Constance C. D'Ambra**

v.

**UNITED STATES of America.**

**Civ. A. No. 4619.**

United States District Court,
D. Rhode Island.

Feb. 16, 1973.

812

Girard R. Visconti, Providence, R. I., for plaintiffs.

Lincoln C. Almond, U. S. Atty., Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) by Constance C. D'Ambra and her husband Joseph A. D'Ambra for injuries sustained by plaintiff wife and losses incurred by plaintiff husband as a result of the shock and physical manifestations thereof suffered by Constance D'Ambra from witnessing her infant son of four years, Gregory Allen D'Ambra, being struck and killed by a United States mail truck.

Jurisdiction of this Court is predicated on 28 U.S.C. §§ 1346(b), 1402(b). The plaintiffs reside and all the operative facts occurred in the state of Rhode Island. Therefore, Rhode Island law must be applied in order to determine the substantive rights of the parties. 28 U.S.C. § 1346(b); Landon v. United States, 197 F.2d 128 (2nd Cir. 1952); Jones v. United States, 265 F. Supp. 858 (S.D.N.Y.1967); Mormino v. United States, 249 F.Supp. 981 (D.Mo. 1966); Reuter v. United States, 110 F. Supp. 366 (D.Pa.1953).

The defendant has moved to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action. The facts in the instant case, stipulated to by the parties, are the findings of fact made by this Court in Joseph A. D'Ambra v. United States of America, C.A. No. 4545 (March 17, 1972). That case determined that the mail truck driver was guilty of negligence and both Gregory and his mother were free of contributory negligence. This finding of liability was affirmed by the First Circuit Court of Appeals in D'Ambra v. United States, No. 72–1205 (October 24, 1972).

The facts follow: Mr. Gaston Payette, the driver of the United States mail truck, struck Gregory D'Ambra on Hawthorne Street, a wide-paved road in an average urban residential neighborhood. Both sides of this street are lined by one-family houses.

Just previous to the accident, Mrs. D'Ambra and her children were visiting her next door neighbor at No. 20 Hawthorne Street. The two mothers and their six children went to the front of the house to check the lawn mower which would not operate. While on the front lawn, they saw the mail truck at No. 1 Hawthorne Street, and when it reached No. 5 five of the youngsters, including Gregory, ran to it. Gregory re-

turned, however, and started playing in the driveway between No. 20 and No. 22. Therefore, when Mr. Payette reached address No. 5, four children, ranging in age from four to eight years, came to the right side of his truck and asked for mail.

While the truck was stopped at No. 7, Gregory ran to the street entrance of the driveway between No. 20 and No. 22, and ran out at or about the time Mr. Payette started to drive the truck from No. 7. The left front of the truck struck Gregory.

The line of vision between Mr. Payette and the driveway where Gregory was playing was at all times clear and unobstructed.

Although Mr. Payette denied seeing the two mothers, the two mothers and their six children on the lawn of No. 20 were almost in his direct line of vision. And when he was parked at No. 7, the two mothers were in talking distance.

Mrs. D'Ambra testified, and I so find, that she heard a thump and saw Gregory go under the front wheel of the mail truck. She screamed, but the truck did not stop, and she witnessed the rear wheel of the truck also pass over her son.[1]

The question of recovery by a bystander mother for the negligent infliction of mental harm is of first impression in this jurisdiction. On the basis of a close examination of Rhode Island precedent, I do not find that such an action is precluded. Rather, in order to determine whether there is such a cause of action, I find that a policy analysis is demanded by the Rhode Island opinions.

The seminal Rhode Island case, Simone v. Rhode Island Co., 28 R.I. 186, 66 A. 202 (1907) rejected the impact rule, which was then the law of the overwhelming majority of jurisdictions.[2] The court held that when a person was physically endangered by the acts of a defendant, even though no physical impact resulted, that person could recover for the fright experienced from the defendant's negligence, when that fright is followed by physical ills or gives rise to nervous disturbances which in turn lead to physical ills.

In reaching its conclusion, the court soundly refuted the "impossibility of administration" policy arguments of Spade v. Lynn & Boston R. Co., 168 Mass. 285, 47 N.E. 88 (1897), the leading case adopting the impact rule. The *Simone* court, with insight, wrote:

"It is always a question, frequently of much difficulty, to be decided in the particular case, whether the injury for which damages are sought is the proximate result of the act or acts complained of. But when it is admitted, as it is in Spade v. Lynn & Boston R. Co., *supra*, that in a large class of cases there may be injuries of the most serious character directly resulting from the negligence of the defendant, as a proximate cause, for which the law will afford no remedy because of some probable difficulty or occasional injustice in the administration of a more liberal rule, it appears to us, that the conclusion is quite illogical and is a pitiful confession of incompetence on the part of courts of justice." Simone v. Rhode Island Co., *supra*, 66 A. at 206.

1. Counsel have agreed to rest on the transcript of the first trial for the determination of facts relevant to the instant motion.

2. Only six jurisdictions had previously overruled the doctrine of impact:
 Purcell v. St. Paul City R. Co., 48 Minn. 134, 50 N.W. 1034 (1892);
 Mack v. South Bound R. Co., 52 S.C. 323, 29 S.E. 905 (1897);
 Gulf, etc., R. Co. v. Hayter, 93 Tex. 239, 54 S.W. 944 (1900);
 Watson v. Dilts, 116 Iowa 249, 89 N.W. 1068 (1902);
 Stewart v. Arkansas Southern R. Co., 112 La. 764, 36 So. 676 (1904);
 Kimberly v. Howland, 143 N.C. 398, 55 S.E. 778 (1906).
 See A. H. Throckmorton, Damages for Fright, 34 Harv.L.Rev. 260, 265 n. 28 (1920–1921).

The *Simone* court, considering in a practical common sense way the inextricable intertwining of mental and physical processes, also anticipated the recognition of modern medicine that all emotional disturbances have physical ramifications. See Comment: Negligently inflicted Mental Distress: The Case for an Independent Tort, 59 Geo.L. J. 1237, 1259 (1971). The court thus quoted with approval such statements as the following:

> " 'The mind and body operate reciprocally on each other. Physical injury or illness sometimes causes mental disease. A mental shock or disturbance sometimes causes injury or illness of body, especially of the nervous system. Now, if the fright was the natural consequence of . . . the circumstances of peril and alarm in which defendant's negligence place plaintiff, and the fright caused the nervous shock and convulsions and consequent illness, the negligence was the proximate cause of those injuries. [Purcell v. St. Paul City Ry. Co., 48 Minn. 134, 138, 50 N.W. 1034.]' " Simone v. Rhode Island Co., *supra*, 66 A. at 207.

*Simone* therefore established the negligent infliction of mental distress as an independent cause of action. Its rejection of the impact rule does not imply, however, an automatic extension of the protection of tort law to bystander mothers who are not themselves physically imperilled. See Barber v. Pollock, 104 N.H. 379, 187 A.2d 788 (1963) [refusing to so extend Chiuchiolo v. New England Wholesale Tailors, 84 N.H. 329, 150 A. 540 (1930)]; Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969) [refusing to extend Battalla v. State, 10 N.Y.2d 237, 219 N. Y.S.2d 34, 176 N.E.2d 729 (1961)].

To the contrary, there is one Rhode Island case which must be fully discussed before this Court can finally conclude that Rhode Island law does not preclude the action before it.

Bedard v. Notre Dame Hospital, 89 R.I. 195, 151 A.2d 690 (1959) held that the custody of a minor child is a legally protected interest, that recovery can be had for mental anguish caused by the wrongful detention of a two year old child by the defendant, but reaffirming Simone v. Rhode Island Co., *supra*, found that recovery for such mental anguish is only allowed when there is concomitant or subsequent physical manifestations of the psychic injury. What must be determined is the effect on the instant case, of the following cursory dicta of *Bedard*:

> "It is generally held that a parent is not entitled to recover for mental distress and anxiety on account of an injury to his child unless the injury is a willful or malicious one. 39 Am.Jur., Parent and Child § 80, p. 726. In McGarr v. National & Providence Worsted Mills, 24 R.I. 447, 53 A. 320, 60 L.R.A. 122, the court in effect stated that the jury was not at liberty to consider the fact that the plaintiff had been deprived of the comfort and society of the child and that the jury could not consider any physical or mental suffering or pain which may have been sustained by the parent by reason of the injury to the child. That case involved an action of trespass on the case for negligence and therefore differs materially from the instant case which alleges a willful invasion of plaintiff's legally protected interest of custody." *Id.* at 692.

I cannot consider the above dicta as controlling in this case. The citation of the "black letter law" rule which usually denies recovery for mental distress suffered by a parent because of injuries to the child unless such injuries are intentionally caused is merely a statement of the weight of authority, referred to only in passing by a court concerned with an intentional tort. This casual statement cannot be extrapolated into a bar under Rhode Island law against all recovery by parents for mental distress on behalf

of their child in all conceivable circumstances.

Furthermore, the citation of McGarr v. National & Providence Worsted Mills, *supra,* by the *Bedard* court was made only to distinguish *McGarr* from the case before it. The *Bedard* court was not engaged in an evaluation of the precedential weight of *McGarr,* since noting the disparities between the two cases was sufficient support for the conclusion that the older case was not controlling. The *Bedard* court thus failed to recognize that the subsequent *Simone* case vitiated the authority of *McGarr.*

I therefore conclude that recovery by a bystander parent for the negligent infliction of mental harm is not foreclosed by Rhode Island law. I further find that the lesson of *Simone* is that the issue of recovery for mental distress deserves careful analysis of the policy questions and a realistic appraisal of the practical problems in extending liability. This conclusion is supported by the policy analysis approach used in two very recent Rhode Island cases which promulgated new rules of tort law.

Ritter v. Narragansett Electric Co., 283 A.2d 255 (R.I.1971) adopted the doctrine of strict liability in tort when the plaintiff sustains injuries from a defective product while using it in a way for which it was intended. The *Ritter* court, concurred with the statement of Justice Roberts in Miller v. Preitz, 422 Pa. 383, 420, 221 A.2d 320, 339 (1966) that "The matter is solely one of policy . . ." and should be approached without reference to contract law. It added that the adoption of § 402A of the Restatement would serve "to promote the cause of justice in these cases." *Id.* 283 A.2d at 261.

And after an exhaustive study of precedent and legal commentary, Wilkinson v. Vesey, 295 A.2d 675 (R.I.1972) rejected the majority view that a plaintiff in a malpractice action must provide expert testimony as to the community standard of revelation as to hazards attendant to treatment when he bases recovery on the absence of informed consent.

Before proceeding to the merits of the case, this Court must add, however, that it has great regard for the responsibility it bears in determining state law. Since this is a Federal Tort Claims action over which the federal courts have exclusive jurisdiction, 28 U.S.C. § 1346(b), the plaintiff has no recourse to the state courts for a determination of the existence of a cause of action. To shirk our duty of considering whether a cause of action lies would deprive the plaintiff of her only forum.

Yet, this Court is not unmindful of the long span of time since the Rhode Island courts last considered the issue of the negligent infliction of mental distress in *Simone.* Nor is it unaware of the diversity of opinions and the profound philosophical differences involved in the current debate over the issue of whether a bystander parent should be allowed to recover for the negligent infliction of psychic harm, such that two of the most respected courts in the country, the highest courts of New York and California, have reached opposite conclusions.[3] Given the controversial nature of the issue at bar today, this Court well realizes that the Rhode Island Supreme Court may disagree with whatever decision it reaches. However, neither this thought nor the difficulty of the task excuses decision, for:

> "In the absence of a state court ruling, our duty is tolerably clear. It is to decide, not avoid, the question." Daily v. Parker, 152 F.2d 174, 177 (7th Cir., 1945)

As noted by a distinguished commentator:

> "When the rights of a litigant are dependent on the law of a particular state, the court of the forum must do its best (not its worst) to determine

---

3. Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968); Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S. 2d 554, 249 N.E.2d 419 (1969).

what that law is. It must use its judicial brains, not a pair of scissors and a paste pot. Our judicial process is not mere syllogistic deduction, except at its worst. At its best, it is the wise and experienced use of many sources in combination—statutes, judicial opinions, treatises, prevailing mores, custom, business practices; it is history and economics and sociology and logic, both inductive and deductive." Corbin, the Laws of the Several States, 50 Yale L.J. 762, 775–76 (1941) quoted in H. Hart and H. Wechsler, The Federal Courts and the Federal System 630 (1953). See also, Clark, State Law in the Federal Courts: The Brooding Omnipresence of Erie v. Tompkins, 55 Yale L.J. 267 (1946).

These views of the function of a federal court in determining state law have been endorsed by federal courts. Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 851 (2nd Cir. 1967); also Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

Therefore, impelled by my conception of the duty of this Court and by the example of the Rhode Island Supreme Court in the *Simone, Ritter,* and *Wilkinson* cases, I turn to the merits of the issue before me.

■ The passage of sixty-five years since the rendering of *Simone* has seen the development of a society educated in psychology, with the average layman appreciative of the debilitating effects of psychic damage. In the same time interval our society has grown increasingly complex, competitive, and stressful. Not every psychic injury negligently inflicted is entitled to the protection of the law.[4]

■ The concept of "duty" is the traditional terminology in tort law which denotes that the relationship of plaintiff and defendant is such that, the defendant is obligated to exercise care toward the plaintiff or, in other words, that he is obliged "to conform to the legal standard of reasonable conduct in the light of the apparent risk." Prosser, The Law of Torts at 331 (3rd ed. 1964). On the meaning of duty, Dean Prosser has written:

"The statement that there is or is not a duty begs the essential question— whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it has ever been formulated. * * * But it should be recognized that *'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."* (footnotes omitted) (emphasis added). *Id.* at 332–333.

The elasticity of the concept of duty is well illustrated in this area of tort law. Courts historically have evinced great caution in extending the umbrella of the law to encompass recovery for mental distress based on a negligence action. As a result confusion abounds because of the various doctrines developed in order to determine liability.

The most conservative rule, that requiring physical impact, was embraced in a classic case in 1897. Spade v. Lynn & Boston R. Co., *supra*; see also Mitchell v. Rochester Ry. Co., 151 N.Y. 107, 45 N.E. 354 (1896). Since then the rule has become so attenuated that even the most minor contacts have sufficed. See Prosser, The Law of Torts at 350, 351 (3rd ed. 1964) and cases cited therein. The majority of jurisdictions now reject the prerequisite of contemporaneous im-

---

4. Smith argues that if "all negligent invasions of mental tranquility were actionable without proof of physical injury or disability" that it would encourage neuroses in the population. He suggests conditioning people to be tougher, by "pampering the psyche less." H. Smith, Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli, 30 Va.L.Rev. 193, 288 n. 128.

pact before allowing recovery, see Recent Cases: Negligence, 18 Buff.L.Rev. 201, 204.

For most of the jurisdictions that have repudiated the impact doctrine, rules that revolve around the physical endangerment of the plaintiff have developed. Some permit recovery when the plaintiff was in fear of his own safety, even when he may have feared also for the safety of his children. See, e. g., Penick v. Mirro, 189 F.Supp. 947 (D.Va.1960); Barber v. Pollock, *supra*. Others arrive at the same result by permitting a cause of action if the plaintiff was within the zone of danger. See, e. g., Bowman v. Williams, 164 Md. 397, 165 A. 182 (1933); Hopper v. United States, 244 F.Supp. 314 (D.Colo.1965). However, a few courts have held that a plaintiff cannot recover for physical injuries solely due to fear for the safety of others even if he was in the zone of physical danger. Strazza et al. v. McKittrick et al., 146 Conn. 714, 156 A.2d 149 (1959); Klassa v. Milwaukee Light Co., 273 Wis. 176, 77 N.W.2d 397 (1956).

Two jurisdictions have adopted a negligence approach.[5] Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) held that negligence principles are applicable in determining the existence of a cause of action when a bystander parent witnesses the death or injury of his child. Rodrigues v. State, 52 Haw. 156, 472 P.2d 509 (1970) espoused a negligence approach in the case of a homeowner who suffered mental distress, when a flood, caused by an overflowing culvert clogged by the state's carelessness, seriously damaged his newly built house.

Commentators have long proposed such a utilization of the traditional rules of negligence law to determine liability for the non-intentional infliction of mental injury. See H. W. Smith, Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli, 30 Va.L.Rev. 193 (1943–1944); Prosser, The Law of Torts at 353–354 (3d ed. 1964); Comment: Negligently Inflicted Mental Distress: The Case for an Independent Tort, 59 Geo.L.Rev. 1237 (1970–71); Recent Cases: Negligence, 18 Buff.L.R. 201 (1968–1969); Bystander's Recovery for Psychic Injury, 32 Albany L.Rev. 489 (1968). The refusal of the overwhelming majority of jurisdictions to adopt a negligence doctrine and to maintain instead bright line rules has been based on policy considerations.

The policy grounds most often mentioned are the unforeseeability of the injury, disproportionate liability in relation to culpability, burdensome liability on the tort feasor, the danger of fraudulent claims, and unlimited liability because of no clear-cut stopping point in allowing such recovery. See the classic case of Waube v. Warrington, 216 Wis. 603, 258 N.W. 497 (1935); see also Resavage v. Davies, 199 Md. 479, 86 A.2d 879 (1952); Barber v. Pollock, *supra*; Jelley v. LaFlame, 108 N.H. 471, 238 A. 2d 728 (1968); Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E. 2d 419 (1969).

---

5. Although the Supreme Court of Maine in Wallace v. Coca-Cola Bottling Plants, Inc., 269 A.2d 117 (1971) rejected the impact rule, seemingly in favor of negligence principles in a case where a man was made sick by finding a prophylactic in his soda bottle, the court added the ambiguous caveat:

"In applying this rule, however, we recognize that it must be so limited within the bounds of foreseeability as to preclude a host of false and groundless claims." *Id.* at 121.

Therefore, Maine has not been counted as a jurisdiction which would apply negligence principles to the recovery of a bystander parent for psychic injuries suffered by witnessing injury to his child.

Rodrigues v. State, *infra*, stated negligence principles should be applied to determine whether plaintiffs could recover for the mental distress suffered when their home was negligently damaged. Presumably, negligence principles would also be applied if plaintiff's children were injured or killed negligently. Therefore, Hawaii has been included as a jurisdiction which would apply negligence principles to the recovery of a bystander parent for mental distress.

These policy reasons will be examined with the following caution in mind:

"In any discussion of the denial of a right of action on the ground of public policy, it must be borne in mind that the general theory upon which the common law is based is that there is a remedy for every wrong, and in any case in which A is shown to have committed a wrongful act as a proximate result of which B has suffered damage, there is a very strong presumption in favor of a right of action by B against A. If B's right to maintain such an action is denied on the ground of public policy, such policy must be made very clearly to appear and must be strongly grounded on considerations of public welfare." Archibald H. Throckmorton, Damages for Fright, 34 Harv.L.R. 260, 264 (1920–21).

■ The danger of fraudulent claims as a ground for precluding an action based on mental injury has long been rejected by Rhode Island law. To cite once more the eloquent words of *Simone:*

"But when it is admitted . . . that in a large class of cases there may be injuries of the most serious character directly resulting from the negligence of the defendant, as a proximate cause, for which the law will afford no remedy because of some probable difficulty or occasional injustice in the administration of a more liberal rule, it appears to us that the conclusion is quite illogical and is a pitiful confession of incompetence on the part of courts of justice." Simone v. Rhode Island Co., *supra,* 66 A. at 206.

The danger of fraudulent claim argument is even less tenable today since medical proof of psychic injuries is now available. Comment: Negligently Inflicted Mental Distress: The Case for an Independent Tort, 59 Geo.L.Rev. 1237, 1259 (1970–71). The "sifter" established under *Simone* to ferret out the claims most amenable to fraud is the requirement that no recovery can be had for mental distress that has not manifested itself in physical symptoms.

The other policy considerations which must be investigated are the allegations of disproportionate, burdensome, and unlimited liability. Whether liability is disproportionate and burdensome is dependent on whether an assessment of the criticism of unlimited liability discloses that such a fear is justified.

The problem of unlimited liability has been cogently expressed in Tobin v. Grossman, *supra,* 301 N.Y.S.2d at 560, 249 N.E.2d at 423:

"The final and most difficult factor is any reasonable [degree of] circumspection, within tolerable limits required by public policy, of a rule creating liability. Every parent who loses a child or whose child of any age suffers an injury is likely to sustain grievous psychological trauma, with the added risk of consequential physical harm. Any rule based solely on eyewitnessing the accident could stand only until the first case comes along in which the parent is in the immediate vicinity but did not see the accident. Moreover, the instant advice that one's child has been killed or injured, by telephone, word of mouth, or by whatever means, even if delayed, will have in most cases the same impact. The sight of gore and exposed bones is not necessary to provide special impact on a parent. Again, the logical difficulty of excluding the grandparents, the relatives, or others in loco parentis, and even the conscientious and sensitive caretaker, from a right to recover, if in fact the accident had the grave consequences claimed, raises subtle and elusive hazards in devising a sound rule in the field."

*Tobin* seems concerned about two cutting off points: first, at what spatial and time point the parent's right to re-

covery is barred, even though emotional trauma that leads to physical ills may be suffered; second, at what degree of relationship is liability barred.

■ Dillon v. Legg, *supra*, 69 Cal. Rptr. at 80, 441 P.2d at 920, whose criteria the *Tobin* court found inadequate, set out the following guidelines for assessing the foreseeability of the injury:

"In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."

For reasons which will be fully explicated below, this Court, unlike the court in *Tobin*, believes that the criteria set forth in *Dillon* for evaluating the foreseeability of the injury sufficiently serve to define the parameters of the cause of action, with one additional prerequisite—that the presence of the parent must also be foreseeable.

Foreseeability of injury presumes the foreseeability of the presence of the parent. Physical Injury Caused by Emotional Trauma, 73 Dick.L.Rev. 350, 359 (1968–69). Although the *Dillon* opinion does indicate the assumption of this premise, it does so in a cursory statement:

"Surely, the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma." *Id.* 69 Cal.Rptr. at 81, 441 P.2d at 921.

This Court deviates from the rule of *Dillon* in that it does not think that the presence of the parent can be presumed. Rather, a foreseeability analysis is necessary, for as one classic case has stated:

"The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." Palsgraf v. Long Island R. R. Co., 248 N.Y. 339, 162 N.E. 99, 100 (1928).

In *Palsgraf*, the issue presented was whether liability should be imposed for injury to a plaintiff who stood outside any zone of apparent danger and to whom harm could not reasonably have been foreseen. In the instant case the situation is the converse. Once presence of the parent at the accident or within the immediate vicinity is established, the shock and trauma of a parent who sees his child killed or injured is easily foreseeable. It is the presence of the parent that may or may not be foreseeable, and that therefore, may or may not be within the "range of apprehension."

The *Dillon* criteria, admittedly arbitrary, define the outside limitations of the cause of action. See Prosser, *supra*, at 354. Such restrictions are necessary in order to avoid unlimited liability for it is foreseeable that the injury or death of a child will have an impact on a parent, whether or not he or she contemporaneously experiences the accident. However, as discussed above, the indispensable further prerequisite for the creation of a cause of action is the foreseeability of the presence of the plaintiff.

■ Foreseeability of the presence of the parent can be evaluated by studying such factors as:

(1) the age of the child; [6]

(2) the type of neighborhood in which the accident occurred;

(3) the familiarity of the tortfeasor with the neighborhood;

(4) the time of day; and

(5) all other circumstances which would have put the tortfeasor on notice of the likely presence of a parent.

Where the cause of action is circumscribed by the *Dillon* criteria and the requirement of the foreseeability of plaintiff's presence, unlimited liability, and therefore burdensome and disproportionate liability, is unlikely.

This conclusion is reinforced by the fact that the spectre of burdensome and unlimited liability has not been borne out in the two jurisdictions that have utilized the negligence approach in assessing these mental distress claims—England and California.

Thus Bourhill v. Young [1943] A.C. 92 (1942) denied recovery to a pregnant fishwife, standing on the far side of a tramway car, who was about 45 feet from the site of the accident at issue. She could not see the accident; rather she was startled by the sound of the collision, and had a stillborn baby a month later. Recovery was denied on the ground that the risk of injury to this woman was so remote that it was not reasonably foreseeable by the defendant.[7]

And the California case law has demonstrated a very close adherence to the criteria set out in *Dillon, supra*. Of the four cases that have arisen since the rendering of the *Dillon* opinion, three cases have denied liability.

It has been held that where the plaintiff-wife did not see her injured husband until she was summoned to the emergency room of the hospital, no liability would lie for her emotional distress. Deboe v. Horn, 16 Cal.App.3d 221, 94 Cal.Rptr. 77 (1971).

Wynne v. Orcutt Union School District, 17 Cal.App.3d 1108, 95 Cal.Rptr.

6. On this issue Smith long ago wrote:
"The true question is whether D knows or should anticipate that P will be an involuntary witness of the primary negligence and thereby be subject to an unreasonable risk of injury through psychic stimuli. * * * That the parent of an immature child under seven years of age is likely to be near at hand hovering over her 'chick' is something a reasonable actor should foresee whereas he can hardly anticipate parental presence if the offspring is more mature. If D's negligence injures a child of any age in his own yard or house, the likelihood that relatives may witness the episode would seem to be a foreseeable risk."
H. Smith, Relations of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli, 30 Va.L.Rev. 193, 239 n. 152 (1943–44).

7. Admittedly, the state of British law as to recovery for bystander parents has been cloudy since King v. Phillips, 1953, 1 QB 429 denied recovery to a mother who heard a scream and looking from an upstairs window saw her child's

bicycle underneath a taxi. See Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases, 35 U.Chi.L.Rev. 512, 524–525 (1968).
Yet a more recent case, Boardman v. Sanderson [1964] 1 W.L.R. 1317 (1964) allowed recovery to a father in the following circumstances. Both father and son were passengers in the defendant's car. The defendant asked the father to go into a garage and pay a bill. In the interim, while backing up his car, the defendant negligently ran over the child's foot. Hearing the child's screams, the father ran out, saw the child's foot trapped underneath the wheel and tried to release it.
Lord Justice Omerod commented:
"It is clear that a duty was owed by the defendant not only to the infant but also to near relatives of the infant who were, as he knew on the premises, within earshot, and likely to come upon the scene if any injury or ill befell the infant." *Id.* at 1322.
From knowledge of the presence of the parent, it is only a short step to foreseeability of the presence of the parent.

458 (1971) found that there was no actionable claim where the parents were complaining of nervous shock due to their son's teacher's disclosure to his classmates, who in turn relayed the information to him, that he had a fatal disease. The court stated:

". . . the facts at bench did not fit the personal-injury mold of *Dillon*. No accident occurred. No injury to the child is alleged. No breach of a duty to the child is pleaded. A fortiori, no breach of duty to the parents occurred." *Id.* at 459.

And Capelouto v. Kaiser Foundation Hospitals, 98 Cal.Rptr. 631 (Cal.App. 1971) denied recovery to parents for the emotional distress suffered as a result of their observing the lengthy unfolding of the symptoms of salmonella infection, contracted by their infant as a newborn because of the defendant hospital's negligence. The court stressed that *Dillon* involved a single traumatic accident, contemporaneously observed.

The sole case permitting recovery, Archibald v. Braverman, 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969) extended the *Dillon* rule to a parent who was not an eye-witness to the accident. The plaintiff's thirteen year old son was buying gunpowder and was grievously injured when it exploded. His right hand, right wrist and a part of his right forearm were amputated and his right eye was seriously injured. His mother was said to have appeared moments later.

Undoubtedly the mother was met by a bloody and shocking scene. However, unless there were facts other than those stated in the opinion, I believe the case was wrongly decided. The *Archibald* court failed to examine the question of the foreseeability of the presence of the plaintiff mother, except to casually note that a tortfeasor who causes injury to a child may reasonably expect the mother to be close by. To my mind, the nearby presence of the mother of a thirteen year old boy who is buying gunpowder is not reasonably foreseeable. So even in this case, if the court had studied the foreseeability of the presence of the plaintiff, the case may well have been decided .otherwise.

I therefore find that the public policy arguments are not persuasive. I am also convinced that the above described negligence standards would serve to promote justice.

 The analysis of the *Tobin* court, which denies all recovery on the ground that such an "indirect harm from the loss or injury of loved ones" is part of the "risk of living and bearing children," (*Tobin, supra,* 301 N.Y.S.2d at 561, 249 N.E.2d at 424) imposes the assumption of risk doctrine, which has been called the equivalent of a plaintiff's strict liability [Calabresi and Herschoff, Toward a Test for Strict Liability in Torts, Yale L.J. 1055, 1065 (May 1962)], on all these cases. The more appropriate and relevant approach in order to effect justice is to ask whether the defendant or the plaintiff should more properly pay the costs of plaintiff's injuries. When it is foreseeable to the defendant that the plaintiff may well experience the shock of seeing an accident involving his child, he has the obligation of exercising reasonable care to avoid the infliction of psychic injury, and a breach of such obligation should result in his bearing of liability.[8]

I concur with the statement of Hopper v. United States, *supra*, 244 F.Supp. at 318 that in cases such as the one at bar:

"[W]e should not close our minds and that is what we do when we adopt a rule that persons suffering fright from witnessing injury to another are invariably beyond the risk."

This Court is furthermore persuaded that the law in this area is evolving towards the application of the principles of negligence law. As has already been

---

8. Pursuant to 28 U.S.C. § 2674, the United States is not liable for punitive damages. Since damages for psychic injury are solely compensatory, this cause of action is permissible against the United States.

mentioned, the post-*Dillon* case of Rodrigues v. State, *supra,* held that negligence principles should be applied to determine whether recovery should be allowed for mental distress suffered as a result of the careless destruction of property.

Although Schurk v. Christensen, 80 Wash.2d 652, 497 P.2d 937 (1972) in a five to three decision found the case before it inappropriate for a deviation from the traditional rule requiring the endangerment of the plaintiff in order to recover for the negligent infliction of mental harm, the court took care to stress that it was not holding that

". . . the strict application of the general rule against recovery for mental anguish and distress in tort liability cases should not be reexamined." *Id.* at 940.

And when the Supreme Court of Maine rejected the impact rule, instead of jumping to the next notch on the "evolutionary" scale and requiring imperilment of the plaintiff the court instead stated:

"[W]e adopt the rule that in those cases where it is established by a fair preponderance of the evidence there is a proximate causal relationship between an act of negligence and reasonably foreseeable mental and emotional suffering by a reasonably foreseeable plaintiff, such proven damages are compensable . . . ." *Id.* 269 A.2d at 121.

On the basis of the above discussion, I do not find that public policy justifies the preclusion of the cause of action for the negligent infliction of mental harm on a bystander parent. Instead, I hold that the creation of such a cause of action is in the interest of justice. This Court therefore adopts the rule and rationale of the *Dillon* opinion and adds the requirement of the foreseeability of the parent's presence.

Of course, it must be stressed that the Court today has decided only that on the basis of the facts before it; that is, where there is an eyewitness parent, there may be a cause of action. This Court cannot speculate as to the further factual patterns which may arise. The law is an evolving process. The details of a new cause of action can only be worked out as the courts confront different factual situations and develop experience in the application of a new rule of law. This Court trusts that evolutionary process.

■ Applying the law to the facts of the case at bar, I find a cause of action has been stated.

The accident occurred in a residential neighborhood. Moreover, the driver was familiar with the neighborhood. The children who surrounded the mail truck asked for their parents' mail, an objective indication that they lived in the neighborhood. Gregory, who had been part of this group but broke away to play by himself, was only four years old and not reasonably to be expected to be far from his mother. Furthermore, prior to the children's running to the mail truck, Mr. Payette had an unobstructed view of the two mothers with their six children. Although he denied seeing them, such a sizable grouping on a front lawn, including, presumably, clamoring children, would reasonably have been expected to be noticed by the average man. In any event, if the presence of the plaintiff was indeed unknown, it was foreseeable.

Since the plaintiff mother was but across the street and an eyewitness to the accident, psychic injury was also foreseeable.

The motion to dismiss this action is therefore denied.